## COMMONWEALTH v. C. M. SPINK ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF QUARTER SES-
SIONS OF WARREN COUNTY.

Argued May 7, 1890—Decided November 3, 1890.
[To be reported.]

1. The 140th section of the act of April 14, 1834, P. L. 366, prescribing
the method of drawing the names of jurors from the panel upon the trial
of causes, and the manner in which challenges shall be made, applies,.
neither in its original form, nor as amended by the act of June 23, 1885,
P. L. 138, to cases of criminal prosecutions.
2. A prosecution for a criminal conspiracy to have the wife of one of the
defendants confined in an insane asylum, is within the provisions of § 2
(*b*), act of May 23, 1887, P. L. 158, rendering husband and wife com-
petent to testify " in any criminal proceeding against either, for bodily
injury or violence attempted, done, or threatened upon the other."
3. It is competent for the commonwealth, in a criminal case, to show the
existence of a motive on the part of the defendant to commit the offence
charged, and the defendant, by filing a guarded written admission of a
fact, consistent with the theory of such motive, cannot shut out proof of
all the real facts relevant to that question.
4. In a prosecution for a conspiracy to have a sane person confined in an
insane asylum, the fact that an adjudication of insanity was regularly
made, under the act of April 20, 1869, P. L. 78, does not render it nec-
essary, to make proof of sanity admissible, or to convict the defend-
ants, that a fraudulent collusion between them and the commissioners
in lunacy be shown.
(*a*) An indictment for a conspiracy to have a sane person confined in an
insane asylum was in two counts; the first charged such a conspiracy in
general terms, and the second was identical with the first, except in spe-
cifying the means by which the object of the conspiracy was to be effected.
The jury found a verdict of guilty on the first count:
5. A motion in arrest of judgment, upon the grounds, that the failure of
the jury to pass upon the second count was equivalent to an acquittal
thereon; that the verdict was therefore inconsistent, as both counts suf-
ficiently charged the same offence, and that the conspiracy charged was
not such as is specified in § 128, act of March 31, 1860, P. L. 413, was
without merit.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and
McCOLLUM, JJ.

No. 233 January Term 1890, Sup. Ct.; court below, No. 34
June Term 1889, Q. S.

### Statement of Facts.

On September 2, 1889, the grand jury returned as a true bill an indictment against C. M. Spink and Edward F. Spink, in two counts. The first count charged that the defendants, being persons of evil minds, etc., and wickedly devising and intending to cause Eliza E. Spink, wife of said C. M. Spink, to be confined in the state hospital for the insane, did fraudulently, etc., conspire, combine, etc., unlawfully to confine and cause to be confined in said hospital the said Eliza E. Spink, she being sane and of sound mind, etc., contrary, etc. The second count charged a conspiracy, in substantially the same terms, with the addition of a statement of the means by which the object of the conspiracy charged was to be effected, to wit, " by divers fraudulent and false means, representations and statements made by them, the said C. M. Spink and Edward F. Spink, to the Court of Common Pleas of said county of Warren and to certain persons, to wit: A. J. Davis, Reverdy B. Stewart and Charles A. Peterson, appointed by said court to inquire into the sanity of said Eliza E. Spink, and by divers other false and fraudulent means to the jurors aforesaid as yet unknown." A motion to quash the second count of the indictment having been overruled, the defendants pleaded not guilty.

On September 5, 1889, the case was tried and a verdict of guilty was rendered. The court afterwards, on motion of the defendants, granted a new trial.

On December 3, 1889, the case having been called for the second trial, and twelve jurors having been called into the box for challenge, the defendants asked that twenty jurors be called, in accordance with the provisions of the act of June 23, 1885, P. L. 138.

Objected to by the commonwealth for the reason that said act does not apply to causes in the Court of Quarter Sessions.

By the court: Objection sustained; exception.[1]

The jury having been sworn, the commonwealth called as a witness Eliza E. Spink, who testified upon her voir dire that she was the wife of C. M. Spink, one of the defendants. The defendants' counsel then objected to the witness being sworn and giving testimony in the case, on the ground that, being the wife of one of the defendants, she was incompetent.

By the court: Objection overruled; exception.[2]

The witness was then sworn in chief and testified in support

of the indictment.    Her testimony and that of other witnesses,
called by the commonwealth, tended to show that by arrange-
ment between C. M. Spink and his brother, E. F. Spink, the
latter made an application to the president judge of the Court
of Common Pleas of Warren county on June 1, 1889, for the
appointment of a commission, under § 6, act of April 20, 1869,
P. L. 78, to inquire into the sanity of Eliza E. Spink and re-
port whether the case was a suitable one for confinement under
said act; that, upon said petition, Reverdy B. Stewart, M. D.,
Mr. Charles A. Peterson and A. J. Davis were appointed com-
missioners; that on June 4, 1889, said commissioners went to
the house of C. M. Spink; that they were met, while on their
way, by E. F. Spink, who conducted them to the house by an
unfrequented by-road; that on their arrival at the house, Mrs.
Spink, who had previously been threatened by her husband and
brother-in-law with proceedings to confine her as insane, sus-
pected their errand and the connection of the defendants there-
with; that she endeavored to prevent E. F. Spink from entering
the house, and on his coming in, notwithstanding her efforts,
she became excited; that she refused to answer inquiries put to
her by the commissioners, contradicted statements made to them
by her husband, and finally, seeing an opportunity to escape
from the house, fled to the outside of it and screamed to the
neighbors for assistance; that, on being brought back by force
into the house, she continued to scream and make violent resist-
ance; that the commissioners departed without having sworn or
examined any witnesses, and, acting upon what they had observ-
ed of the conduct of Mrs. Spink, made a report to the court, find-
ing her to be insane and recommending her confinement; that
their report was approved by the court, and an order issued for
Mrs. Spink's commitment to the state insane hospital at North
Warren, but after having been taken into custody by the dep-
uty sheriff under said order, on further investigation by the
court she was discharged as sane.    The testimony in regard to
the occurrences during the presence of the commissioners at
the house of Mrs. Spink, was objected to when offered, on the
ground that there was no proposal to accompany or follow it
with proof, either of a fraudulent collusion between the commis-
sioners and the defendants, or of some deception practised upon
the commissioners by the defendants.

Statement of Facts.

By the court: Objection overruled; exception.[5]

A large amount of testimony was given on the part of the commonwealth, tending to show that Mrs. Spink was in fact sane. The question of its admissibility was raised by the following bill of exception:

H. Gaylord, a witness for the commonwealth, being on the stand, was asked, upon direct examination, to state whether or not at any time he had known anything peculiar or irrational in Mrs. Spink's actions or conduct.

Defendants' counsel object to the question, because, it appearing in evidence on the part of the commonwealth that a report of a lawfully constituted commission was filed, upon a complaint made by one of the defendants, and it appearing by that report that Mrs. Spink was found to be an insane person and a proper subject for confinement in an insane asylum, the report establishes probable cause unless assailed by evidence that the report was brought about by collusion between the commissioners and the defendants, or by fraud or deceit practiced upon the commissioners by the defendants, whereby they were deceived into making that report, and that the question of sanity or insanity does not meet that established probable cause in any way.

By the court: Objection overruled; exception.[4]

The witness then answered the question in the negative. A similar objection, made to like testimony given by James White on behalf of the commonwealth was overruled; exception.[6]

James White having testified for the commonwealth, in his examination in chief, to a conversation with the defendant, C. M. Spink, in which the latter informed the witness that he, Spink, was going to have his wife taken to the asylum, requesting the witness not to say anything about it, the following questions were put to the witness upon cross-examination:

Q. Is that the conversation that you testified to at the former trial, do you remember? A. I think it is. . . . . Q. Did you testify, "He said also he had a talk with her mother to have her mother come to live with them, to see if she could keep peace in the family, and the mother said she could not do anything, that he must do the best he could, and he said he was obliged to take her to the asylum?" A. Well, that is

Statement of Facts.

what he said. . . . . Q. Then you testified, "He said not to say anything, he didn't want everybody to know about his business?" A. Yes, sir. Q. "He told me that her father died insane;" did you testify to that?

Objected to. It is not competent, and not cross-examination.

Mr. Donly: It is germane to the question of her insanity; that is, it was in that conversation, and was upon that subject. As they intend to use that conversation before this jury for the purpose of convicting these defendants and sending them somewhere worse than the asylum, it is important, it seems to me, that we be permitted to show all that occurred. We are entitled to have all that he said; when a conversation upon a particular subject is introduced by one side, everything that bears upon that subject that is a part of that conversation, the other party is entitled to draw out.

By the court: I think you had better leave it until you reach your side of the case.

The commonwealth objects to the above question, for the reason it is not cross-examination, and it relates to no subject that was testified to in chief by the witness, or brought out by the commonwealth.

By the court: Objection sustained; exception.[7]

Mrs. Spink being upon the stand as a witness, the commonwealth proposed to prove by her ill treatment by her husband, "for the purpose of showing a motive on his part, for this conspiracy."

The defendants then offered and were allowed to file of record the following paper signed by them:

"Now, December 4, 1889, defendants admit of record that for a long time before the finding of the indictment in the above entitled case, and within two years immediately preceding the finding of the same, domestic discord and infelicity existed between the defendant, C. M. Spink, and his wife, Eliza E. Spink, the prosecutrix, sufficient to constitute a motive adequate to cause persons of evil minds and dispositions (such as the defendants are in this indictment described to be) to form the conspiracy and conspiracies charged in the said indictment."

Q. State whether or not you and your husband were living on good terms? A. We have not been for about five years.

Charge of Court below.

Q. State in a general way what his treatment was ?   A. It was
very bad.   Q. Now what was the nature and character of that
bad treatment ?   A. In several different ways.   Q. You may
state, Mrs. Spink, in a general way, what the nature and char-
acter of that abuse to you was ?

Objected to, as incompetent, there being an admission of rec-
ord, sufficient to cover the purpose of the entire offer, and the
witness having already testified that his treatment of her was
very bad.

By the court : Objection overruled and testimony admitted
to the extent of showing the general character of the treatment ;
exception.[3]

The witness then testified that her husband had choked her,
had threatened to poison her, and to kill her, had pounded her
and had beaten her on the side of the head a great many times.

The defendants having adduced testimony tending to rebut
the allegations of the commonwealth, the court, BROWN, P. J.,
at the close of the case, charged the jury in part as follows :

In this, as in all criminal cases, we say to you that the bur-
den of proof rests upon the commonwealth to satisfy you be-
yond a reasonable doubt, growing out of the evidence, of the
defendants' guilt.   If the evidence does so satisfy you, then you
should find the defendants guilty on the first count of the in-
dictment.   The point was not raised, but we are of the opinion
that there can be no conviction upon the second count of the
indictment from the manner in which it is drawn ; and hence,
if there is a conviction at all, it will be confined to the first
count of the indictment.   Unless the evidence does satisfy you,
beyond a reasonable doubt, of the guilt of the defendants of
the offence charged in the first count of the indictment, they
should be acquitted. . . . .

There is no evidence or no claim, so far as we understand,
upon the part of the prosecution, of any conspiracy by the de-
fendants to do a lawful act in an unlawful manner.   The claim
is, that the defendants conspired to do an unlawful act, viz.,
unlawfully to confine and cause to be confined in the state
hospital for the insane, in the county of Warren, Eliza Spink,
the wife of C. M. Spink, she, the said Eliza Spink, being then
and there sane and of sound mind. . . . .

If you find the defendants did agree together and act in concert, to the end that Mrs. Spink might be so confined, then the mental condition, or at least the apparent mental condition, of Mrs. Spink becomes an important subject of inquiry. Indeed, it becomes the most important subject of inquiry that you have before you. What, then, was Mrs. Spink's condition? Or, to put it in another form, what was her apparent mental condition?

It is not claimed by the defendants that she was insane at all times. On the contrary, they say that her insanity was of a kind that manifested itself only at intervals, and that her conduct and appearance at such times were such as to produce a well-grounded belief that her mental condition was such that the curative treatment of the asylum would be for her welfare and for the welfare of the family. If Mrs. Spink's appearance and conduct at times were such as to create an honest, well-founded belief that her removal to the asylum would be for her welfare, and the defendants, under such honest belief and in good faith, took legal steps to accomplish her removal, then the defendants should not be convicted, even though you should think they were mistaken in their belief as to what was proper to be done. . . . .

The question then, on which the guilt or innocence of the defendants turns, is not whether Mrs. Spink was or was not insane, and in such a condition as to make it proper that she should be restrained in an asylum; but the question of fact which you are to answer, from the evidence, is, and to this we again call your special attention, did the defendants conspire together and act in concert to dishonestly and fraudulently procure the confinement of Mrs. Spink in the asylum? There is the pivot of the case. . . . .

If you are satisfied beyond a reasonable doubt, growing out of the evidence, that the defendants by a concerted action, before the commencement of the legal proceedings, agreed in a purpose, fraudulently and unlawfully to confine Mrs. Spink in an insane asylum, and that the legal proceedings were dishonestly resorted to as the mere instrument to carry the unlawful conspiracy, before formed, into effect, then the offence charged in the first count of the indictment is made out, and your verdict should be, guilty on the first count. On the other hand, although in point of fact you may find that Mrs. Spink was not insane and

Charge of Court below.

not a proper subject to be restrained, yet if, as the defendants claim, they honestly believed that her mental condition was such as to make her a proper subject for treatment at the asylum, and in good faith resorted to the legal proceedings as a means to secure such treatment, then the defendants are not guilty. For, as I have before stated, an essential ingredient of crime is an unlawful and fraudulent motive.

The defendants request the court to charge:

4. The said report of said commission, finding said Eliza E. Spink insane and a proper subject for confinement, could only be assailed by evidence of fraudulent collusion between the defendants, or one of them, and the said commissioners, or some of them, resulting in, or bringing about the said finding in said report, or by evidence of deception done or practiced by defendants, or by one of them, by means of which deception the said commissioners were induced and deceived into making the finding in said report.

Answer: Whether this point in the abstract is or is not correct, we say to you that we do not regard it as having any bearing upon the issue before you, and we decline to answer it, inasmuch as we do not understand the prosecution to be assailing the finding of the commission.[8]

5. There is no evidence in this case of such collusion or deception as is described in the fourth point, and the verdict should be not guilty.

Answer: This point is affirmed, except so much as says that "the verdict should be not guilty." That is a question referred to the jury, to determine upon the evidence and the principles of law that we have laid down.[9]

The jury having rendered a verdict finding the defendants guilty upon the first count of the indictment, the defendants moved in arrest of judgment for the following reasons, to wit:

1. The verdict is defective, in that it fails to pass on or dispose of the second count of the indictment, which was before the jury unquashed and undisposed of; and the failure of the verdict to pass on said second count is tantamount to an acquittal upon said second count, which sufficiently charges the same offence set forth in the first count, although the fraudulent means and representations referred to therein are not sufficiently charged, and are mere surplusage.

Arguments.

2. There being a conviction upon the first count and an acquittal· upon the second count, both the said counts sufficiently charging the same offence, the verdict is inconsistent, and no sentence or judgment can lawfully be pronounced thereon.

3. The indictment fails to show or allege that the thing conspired to be done was "to cheat and defraud any person or body corporate of his or their moneys, goods, chattels or other property, or to do any other dishonest, malicious or unlawful act, to the prejudice of another."

This motion having been overruled,[10] and a rule for a new trial having been discharged, the court sentenced the defendants each to pay a fine of $200 and the costs of prosecution, to undergo imprisonment in the county jail for a period of thirty days, and to stand committed, etc.[11] Thereupon the defendants, having obtained a special allocatur, took this appeal assigning for error:

1. The refusal of the defendants' request for twenty jurors.[1]

2. The admission of Eliza E. Spink as a witness.[2]

3–6. The admission of the commonwealth's offers.[3 to 6]

7. The refusal of the defendants' offer.[7]

8, 9. The answers to defendants' points.[8 9]

10. The refusal of the defendants' motion.[10]

11. The sentence imposed by the court.[11]

*Mr. W. E. Rice* (with him *Mr. J. H. Donly* and *Mr. J. A. Schofield*), for the appellants:

1. The act of June 23, 1885, P. L. 138, is a supplement to that of April 14, 1834, P. L. 366, "relative to the organization of courts of justice." The later act embraces the Court of Quarter Sessions, as well as other courts, and plainly applies to this case by express provision. The court below thought it did not apply in criminal cases, because of the recognized practice of standing aside jurors in such cases. But that practice is not more incompatible with an act requiring twenty jurors to be drawn, than with one requiring twelve. The act of 1885 was intended to remedy the evil by which defendants were practically deprived of one challenge, through fear of getting a more objectionable juror than the one challenged.

2. Mrs. Spink was not a competent witness against her husband unless made so by clause (*b*), § 2, act of May 23, 1887, P.

L. 158. She would be competent thereunder in a criminal proceeding against her husband "for bodily injury or violence attempted, done or threatened upon" her. This is not such a proceeding. A conspiracy is a mental, rather than a bodily act. The offence is complete when an unlawful combination is formed, though no act be done toward carrying the main design into effect: 3 Greenl. Ev., § 91. Nor is a conspiracy to place a person in an asylum an "attempt" to do so. It is simply the first step, viz., the "formation of the wicked or unlawful purpose," which is two removes from an attempt: 1 Bouv. Law D., 138.

3. The only effect of the admission of the testimony as to the choking and beating of Mrs. Spink by her husband, was to inflame the jury and deprive the defendants of an impartial trial. And it was unnecessary to show motive, as the defendants had already admitted the pre-existence of domestic discord adequate to constitute the alleged motive. And the court should have permitted us to draw out, on cross-examination, the whole of the conversation referred to in the seventh assignment. If, moreover, as the court below said was the case, the finding of the commission respecting Mrs. Spink's sanity was unassailed, it necessarily follows that it established the existence of probable cause, and that was a complete defence. Accordingly the court should have affirmed the part of the fifth point directing a verdict of not guilty.

*Mr. J. W. Dunkle*, District Attorney, (with him *Mr. O. C. Allen* and *Mr. George H. Higgins*,) for the appellee:

1. That the act of June 23, 1885, P. L. 138, does not apply to criminal cases, is clearly shown by PERSHING, P. J., in the case, In re Calling Jurors, 1 Pa. C. C. R. 644. A conspiracy to do a thing is a threat to do it; and the conspiracy charged in this indictment is a threat of personal injury such as is contemplated by clause (*b*), § 2, act of May 23, 1887, P. L. 158. It is always competent for the commonwealth to show motive. It was not bound to accept the defendants' admission, and be confined to just what the defendant saw fit to admit. And proof of Mrs. Spink's sanity was a necessary part of the commonwealth's case.

2. The finding of the commission, we allege, was procured

by fraud, and surely we had a right to prove that fact. What was done and said, in the presence of the defendants on the occasion of the commissioner's visit, was clearly competent. The seventh assignment cannot be sustained, as the order of proof is entirely within the control of the court below. The defendants are not shown to have been in any manner prejudiced by the ruling of the court below. And the instruction withdrawing the second count of the indictment from the jury, had the same effect as though that count had been quashed.

OPINION, MR. JUSTICE GREEN:

The act of June 23, 1885, P. L. 138, consists of a single section which simply amends the 140th section of the act of April 14, 1834, P. L. 366. That section of the act of 1834 prescribes the method of drawing the names of jurors from the box, and the manner in which challenges shall be made. The concluding sentence of the section directs that when, in the manner prescribed, twelve jurors have been selected and approved, and sworn or affirmed, they shall be the jury to try the cause. The 141st section immediately proceeds to prescribe the oath which must be administered to the jurors in the following form : " You, and each of you, do (swear or affirm) that you will well and truly try the issue joined between C. D., plaintiff, and E. F., defendant, and a true verdict give according to the evidence, unless dismissed by the court or the cause be withdrawn by the parties." It will be seen at once that this is not an oath which can be administered to jurors in criminal cases. It is intended for juries in actions between private parties in suits which are within their control, in which the parties are described as plaintiff and defendant and the cause is subject to dismissal by the court. In the oath administered in criminal prosecutions, the jury is sworn to well and truly try the issue joined between the commonwealth of Pennsylvania and the prisoner at the bar, and a true deliverance make, and the clause in regard to the dismissal of the jury by the court, or the cause being withdrawn by the parties, is entirely omitted. The provisions of the 142d section are applicable only in civil causes. The 148th section especially provides that in criminal cases the courts shall have a like power to that given by the 146th and 147th sections when a challenge to the

array is made.    This section would have been superfluous if the preceding sections of the act had reference as well to criminal as to civil causes.    The 150th section gives two peremptory challenges in civil cases, and four in all criminal prosecutions, and §§ 152 to 155, both inclusive, make special provisions in regard to challenges in criminal cases.    In cases of treason, thirty-five challenges are allowed to the prisoner, and twenty in the felonies exclusively triable in the oyer and terminer, and these challenges are preserved by the act of 1860, except in cases of treason.    The distinction between the two classes of cases is so manifest in the act of 1834, that we cannot possibly apply a change made in one section, which plainly relates to civil cases only, so as to embrace all or any criminal cases. We are clearly of opinion that the 140th section relates only to civil cases, and is therefore inapplicable, either in its original or changed form, to cases of criminal prosecutions.    The first assignment of error is not sustained.

The second assignment is equally untenable.    The act of May 23, 1887, P. L. 158, renders either a wife or husband competent to testify "in any criminal proceeding against either for bodily injury or violence attempted, done, or threatened upon the other."    While it is true that the offence with which the prisoners were charged was conspiracy, it was a conspiracy to have the wife of one of them declared insane, and to have her confined in an insane asylum.    To carry out such a conspiracy, the arrest and imprisonment of the body of the wife was a contemplated and a necessary ingredient, and, as a matter of fact, personal violence was used in effecting the designs of the defendants.    The language of the act is very broad, and includes "any criminal proceeding" for bodily injury or violence, "attempted, done, or threatened."    In the present case, bodily violence was attempted, was done, and was threatened by the defendants, who, it is true, invoked the forms of a legal proceeding to aid them, but the violent character of their acts was rather aggravated than mitigated by that consideration.    The words of the act establishing the competency of the wife or husband are not limited to prosecutions for the immediate act of violence, but embrace "any criminal proceeding" for such acts. A conspiracy to do an act of violence upon the body of another is a crime, and an indictment therefor is a criminal proceeding;

Opinion of the Court.

and it may be quite as material, in the administration of criminal justice, to have the testimony of the injured party to the facts which tend to prove the conspiracy, as to the facts which tend to prove the direct act of personal violence. Moreover, the act embraces threats, as well as acts, and the element of actual violence is therefore not indispensable in considering the question of competency.

The third assignment is without merit in any view of the case. It is not possible that a defendant in a criminal case, by filing a written admission of a fact, in a cautious and guarded way, which is consistent with the theory of a motive to do the criminal act in question, can shut out all the commonwealth's testimony proving, or tending to prove the existence of the motive, with all the attending circumstances. The question is for the jury, and they have a right to know what the real facts are, as well upon the question of motive as upon the principal act of crime itself.

The fourth, fifth, sixth, eighth, and ninth specifications complain of the court in admitting evidence of the sanity of the wife, and in answering defendant's fourth and fifth points relating to the effect of the proceedings on the commission. The theory of these assignments of error is that, because a commission had found the plaintiff insane, she was bound by the finding unless she could prove a fraudulent collusion between the defendants and the persons composing the commission. The court gave to the defendants the full benefit of the finding, and charged the jury that if the defendants honestly believed that the plaintiff was insane, and applied for the commission in good faith and for her benefit, they could not be convicted, even if the plaintiff was really sane. The court further said that the legal proceeding was regular in form, and in exact conformity with the law, and that no person can be convicted of doing an unlawful thing who merely does that which the law permits him to do. And the court further charged the jury that the question for them was whether the defendants did conspire together and act in concert, to dishonestly and fraudulently procure the confinement of Mrs. Spink in the asylum, and whether the information made to the judge on which the commission issued to inquire into her mental condition was merely an instrument to carry into effect the

Opinion of the Court.

unlawful conspiracy, and that the burden of showing such dis-
honest and fraudulent conspiracy rested upon the common-
wealth.    This whole question was very fairly left to the jury;
so that, in order to convict, the jury would be obliged to find
the fact of the fraudulent and unlawful conspiracy, and the
jury did so find.    If they had not so found, the prima facie
effect of the finding of the commission would have required an
acquittal, but the prima facies of the commission was removed,
both by the finding of the distinct fact of the fraudulent and
dishonest conspiracy to make use of the legal proceeding as
an instrument to carry out the conspiracy, and also by the sub-
sequent action of the court in discharging the plaintiff from
confinement under the commission after a hearing upon the
facts.

As to the admission of testimony to prove the wife's sanity
there can be no doubt of its propriety.    Her sanity was a fact
in issue, and it was necessarily to be considered in the deter-
mination of the case.    For that purpose, it was simply indis-
pensable to receive testimony on that subject.    There was a great
mass of testimony in the case in support of the plaintiff's alle-
gation of her sanity, and quite ample testimony in support of
the charge of bad faith, and of the dishonest and unlawful
conspiracy of the defendants to make use of the process of the
law for an unlawful purpose.    In the face of all this, and of
the distinct finding of the jury of the fact of the unlawful
conspiracy and illegal use of process, and of the further fact
that no trial was had before the commission, and no witnesses
examined, and that no opportunity was given to the plaintiff
to be heard by counsel and by witnesses, it cannot possibly be
said that she was absolutely bound by the finding of the com-
mission.    To say that it must have such effect, unless she first
proves a fraudulent collusion between the defendants and the
members of the commission, would be simply a denial of justice,
and upon entirely untenable grounds; because the commission-
ers personally may have acted in good faith, and yet may have
been imposed upon by an artful scheme to come upon the
plaintiff at such a time, and in such aggravating circumstances,
as to arouse in her a storm of indignation, and the most violent
and exciting resistance to their proceedings.    The actual facts
in proof quite strongly tend to support this theory.    Or, the

commissioners may have acted too hastily, and without due precaution, in coming to their conclusions. In point of fact, they did not examine a single witness, took no testimony of any kind, and had no hearing upon the question they were to decide. They simply decided upon what they saw and heard at the time they went to the house, and it must be admitted, upon reading their own testimony on the trial, they made their finding upon an entirely inadequate basis. It is unnecessary to pursue the subject further. These several assignments of error are not sustained.

The seventh, tenth, and eleventh assignments are so manifestly without merit that they are dismissed without discussion.

> The judgment of the Court of Quarter Sessions is affirmed, and it is ordered that the record be remitted to said court for the purpose of carrying the sentence into execution.