# Commonwealth *v.* Gray, Appellant (No. 1).

*Criminal law—Larceny—Witnesses—Evidence of alleged common-law wife—Admissibility.*

Cohabitation and reputation are not marriage, but are merely circumstances from which marriage can be proved. The presumption being in favor of the competency of a witness, the burden is on the defendant to show otherwise, and evidence of cohabitation and reputation alone, is not sufficient to establish a relation, which would render the woman's testimony inadmissible, as the common-law wife of the defendant.

Where there was no evidence of either marriage in fact, or a lawful relation between the parties at the beginning of their association

## 280 COMMONWEALTH *v.* GRAY, Appellant (No. 1).

together, there is no support for the theory of common law marriage, and the consequent incapacity of the witness to testify.

*Criminal law—Larceny—Instructions to jury—Harmless error.*

An erroneous instruction as to the right of the jury to convict a defendant as an accessory after the fact, is not reversible error, where the defendant was indicted for larceny, and tried as a principal, and all the evidence against him related to that charge.

Where no special instructions were requested, unless it is clear that an omission to charge the jury on a relevant point of law did in fact work material harm to the defendant, the verdict will not be reversed on appeal.

Argued May 6, 1919. Appeal, No. 106, Oct. T., 1919, by defendants, from judgment of Q. S. Centre Co., Dec. Sess., 1918, No. 9, on verdict of guilty in case of Commonwealth v. Irvin G. Gray, Clyde G. Gray and George F. Gray. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ. Affirmed.

Indictment for larceny. Before QUIGLEY, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendants appealed.

*Error assigned* was the charge of the court.

*Ellis L. Orvis*, and with him *W. G. Runkle*, for appellants.

*J. C. Furst*, and with him *N. B. Spangler*, for appellees.

OPINION BY HENDERSON, J., July 17, 1919:

The appellants were jointly indicted for the larceny of two heifers, the property of Kyle M. Alexander. These animals were kept with other cattle of the prosecutor on a tract of land on the north side of what is known as Muncy mountain, in Bald Eagle Valley, at a distance of

about two miles from his residence. The cattle were in charge of James Stere, living near the pasture land. He went personally from time to time to look after them. The last time they were seen by him was about the 27th of July, 1918. About the 7th or 8th of August, Mr. Stere went to the premises and found that four of the cattle in the pasture were missing, among which were those described in the indictment. He notified Mr. Alexander of the fact, and they thereupon made a careful and extensive search of the pasture land and of the adjoining farms, but were unable to find the cattle. They did, however, discover tracks leading from the pasture through land known as the Mattern tract, west of the Alexander land, toward a farm known as the Way Place, where two of the defendants, Clyde and George Gray, lived.

Having shown this state of facts, the Commonwealth called a witness, Miss Meris Mann, who had lived with George Gray, ostensibly as his wife, for seven or eight years, who gave evidence to the effect that she was present at the Way farm on Monday evening, July 29th, when George and Clyde Gray went away and returned about ten o'clock in the evening, with two heifers, which later in the night they killed and dressed at the barn, and that they were Mr. Alexander's property. She described the animals, and her description corresponded with the description of the missing animals given by other witnesses for the Commonwealth. The greater part of the night was spent in preparing the meat for market, and early in the morning George Gray, accompanied by the witness, took it to the home of Irvin Gray, seven or eight miles distant; at which place the latter took charge of it and accompanied by his housekeeper, brought it to State College.

Testimony was given that at about half past ten o'clock on Sunday night, July 28th, Irvin Gray came to the home of F. P. Resides, a dealer in meat at State College, for the purpose of selling him some slaughtered cattle which Resides promised to take on condition that they

were not to be brought until Gray was notified that Resides wanted them. Without receiving instructions from the latter, the meat was taken by Irvin Gray to Resides's shop on Tuesday, July 30th. Resides was away from home on that day, but the man in charge of the business received the carcasses of two heifers which corresponded in weight to the size of the animals Alexander had lost.

There was evidence also that at a later time early in the morning, after the defendants were arrested, Sue Wellers, the housekeeper referred to, gave to Meris Mann two hides wrapped in a burlap sack, which the latter dragged to a sawmill where George Gray worked and which seems to have been operated by Irvin Gray. These hides she put in the firebox of the engine, and was in the act of burning them when the prosecutor and a member of the State police, with whom was a deputy State firewarden, appeared and obtained from the fire a piece of black hide, which was produced in evidence at the trial, and which corresponded in color with one of the animals which belonged to the prosecutor. Miss Mann then related to the officers what she knew about the taking of the cattle.

Evidence was also offered to show that after the defendants were confined in the county jail, Irvin Gray offered two prisoners confined therein sums of money if they would secure and destroy the remnant of the hide obtained by the firewarden and State policeman at the sawmill.

A prisoner in the jail testified that Irvin Gray tried to induce him by a bribe to obtain from Meris Mann, who was also confined in the jail, a written statement that what she had said to the prosecutor, the firewarden and the State policeman was not true.

On the part of the defense there was a general and specific denial of the evidence of the Commonwealth tending to show the participation of the defendants in the larceny. Explanation was given by Irvin Gray of his trip to

State College to sell cattle and of the circumstances under which the meat was taken there on the following Tuesday.  It was alleged by all the defendants and by witnesses called by them, that the cattle killed belonged to Irvin G. Gray and were not the property of Alexander. There was also evidence that the Alexander cattle were seen by one or more witnesses of the defendants after the time when the Commonwealth's evidence showed they were killed.

The case went to the jury, therefore, on the issue raised by the evidence as to the identity of the cattle and the credibility of the witnesses called by the Commonwealth and the defendants.  No points for instruction by the court were presented by the defendants, but a general exception was taken to the charge of the court.

The principal grounds of complaint are:

1. That the court did not exclude the testimony of Meris Mann because she was the wife of one of the defendants.

2. That there was error in the instruction of the court with reference to the relation of Irvin Gray to the case as an accessory after the fact.

3. That the trial judge did not caution the jury of the danger of convicting on uncorroborated testimony of an accomplice.

We will consider these objections in their order:

1. Meris Mann was called as a witness for the Commonwealth and was examined without objection from any of the defendants.  She was presumably a competent witness, and the evidence indicates that she was regarded as a single woman by the counsel for the defendant and by the defendants themselves.  It is contended, however, by the learned counsel for the appellant, that the testimony disclosed a common-law marriage between George Gray and her, and that it was the duty of the trial judge on his own motion to enforce the policy of the law which forbids that a married woman testify against her husband under such circumstances.  The weakness of the

argument is, that the fact does not exist upon which it must rest. It is true the witness and George Gray lived together at different places; that she was recognized by relatives and friends as his wife, and that she was called Mrs. George Gray; but she expressly denied that a marriage ceremony had ever been performed or that George Gray ever had married her. When she went to live with him he promised, as she claimed, that he would marry her, and she apparently lived in anticipation that this promise would be kept, but it was declared by her and admitted by George Gray that there never had been a marriage performed. Gray alleged that at Providence, Rhode Island, they had agreed to be husband and wife; but shortly before the trial he stated on oath in answer to questions fixing his status under the Federal Draft Regulations, that he was a single man. The presumption being in favor of the competency of the witness, the burden was on the defendant to show otherwise, and as this was not done, no duty rested on the court to exclude the witness. Cohabitation and reputation are not marriage. They are merely circumstances from which marriage may be presumed: Yardley's Est., 75 Pa. 207; Hunt's App., 86 Pa. 294. Where the circumstances of cohabitation and repute might raise a presumption of marriage, such presumption may be rebutted and is rendered valueless by proof that no marriage in fact had taken place. It is further to be observed that the relation between these parties was illegal at the beginning. It is not pretended that the alleged mutual promise as testified to by George Gray, was made until they had been living together for some time; and where the relation of the parties is illicit at its commencement, it is presumed to continue so until proof of change. Such a relation raises no presumption of marriage. As there was neither marriage in fact nor a lawful relation between the parties at the beginning of their association together, there is no support for the theory of a common-law marriage and the incapacity of the witness to testify.

2. In that portion of the charge bearing on the relation of Irvin G. Gray to the case as an accessory after the fact the court instructed the jury that if he had guilty knowledge after the killing, and was in any manner interested in concealing the crime, he would be treated the same as if he were a principal, and would be known in law as an accessory after the fact. As a proposition of law this could not be sustained. The Act of June 3, 1893, P. L. 286, which is an amendment of the Crimes Act of March 31, 1860, provides that every accessory after the fact to any felony punishable under the act for whom no punishment has been therein provided shall, on conviction, be sentenced to a fine not exceeding $500 and undergo imprisonment with or without labor, at the discretion of the court, not exceeding two years. The learned judge probably had in mind the penalty applicable to an accessory before the fact and inadvertently made an incorrect reference, but no harm was done the defendant. The indictment contained a single count charging larceny, and all the evidence bearing against Irvin G. Gray related to that charge. If he had a guilty connection with the transaction the evidence shows that it was that of a principal, and the jury so regarded it. An error, therefore, by the court on a question of law inapplicable under the evidence, is not a reversible error unless it be made to appear that the defendant was prejudiced: Commonwealth v. Lee, 226 Pa. 283.

3. No request was made for instructions with respect to the weight to be attached to the testimony of Meris Mann. At the close of the charge the trial judge, moved by a desire to present the case fully and impartially, inquired of the counsel for the defendants whether there was anything further which they desired the court to charge the jury with reference to, whereupon the defendants' counsel requested the court to caution the jury against any prejudice that may have arisen in their minds by reason of the great publicity given the case by the newspapers of the county and the comments upon it,

as well as any comments which they may have heard by persons with whom they may have come in contact. The request of the counsel was complied with and the jury appropriately instructed. No other request was offered, nor was there any suggestion of any omission on the part of the court. There is no rule of law which prevents a jury from convicting on the uncorroborated testimony of an accomplice. When they do so convict the control of the verdict is with the trial judge and is not subject to review. A jury may believe an uncorroborated accomplice and if his testimony produce in their minds a conviction of the defendants' guilt, that is sufficient to convict: Cox v. Commonwealth, 125 Pa. 94; Commonwealth v. Craig, 19 Pa. Superior Ct. 81.

It is the common and proper practice for the courts to advise jurors not to convict on the uncorroborated testimony of an accomplice; but the evidence may be so convincing as to induce a jury to convict and to satisfy the trial judge that the verdict should be sustained. Where the jury and the court are satisfied that the witness has told the truth, there is no compelling reason why the verdict should be set aside.

The fourth assignment charges the court with error in defining the crime for which the defendants were tried. It is not clear to what part of the charge the assignment relates, as no part of it is quoted in the assignment. At the beginning of the charge it was stated to the jury that the defendants were indicted for the crime of larceny, and all of the testimony was directed to the accusation of the Commonwealth that the defendants had stolen two of the prosecutor's cattle. We are bound to presume that the jury possessed intelligence necessary to understand the meaning of larceny as applied to the facts disclosed by the evidence. If a definition were desired, it was the duty of the defendants to bring the subject to the attention of the trial judge in order that the omission might be corrected: Com. v. Zappe, 153 Pa. 498. In Hockenberry v. New Castle Electric Co., 251 Pa. 406, it was

279, (1919).]        Opinion of the Court.

said: "This court has repeatedly held, in both criminal and civil cases, where no special instructions were requested, that, unless it is clear that an omission to charge the jury on a relevant point of law did in fact work material harm to the appellant, we will not reverse; further, we have said that in such cases there is a presumption in favor of the justice of the verdict which must be overcome by the appellant before we will reverse."

Applying this doctrine to the charge of the court we find no reason for disturbing the judgment.   It is therefore affirmed, and it is ordered that the defendants surrender themselves to the court below to the end that the sentence be carried into effect to the extent to which it has not already been served.