Commonwealth *v.* Glenn, Appellant.

Argued November 26, 1935.   Before FRAZER, C. J.,
KEPHART, SCHAFFER, MAXEY, DREW, LINN and BARNES,
JJ.

*G. Edward Dickerson,* for appellant.

*Charles C. Gordon,* Assistant District Attorney, with
him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BARNES, March 23, 1936:

This is an appeal from a judgment and sentence, upon
a verdict of murder in the first degree, with the penalty
fixed at life imprisonment.

On the evening of Sunday, April 30, 1933, at about
11:30 o'clock, the defendant returned to his home, No.
1409 N. 13th Street, Philadelphia, where he lived with
his wife, Jeannette Glenn.   There they occupied a rear
apartment, consisting of three rooms on the first floor.
He found a "party" was being held, with drinking and
dancing, and the guests were noisy and boisterous.   Ac-
cording to the testimony, these persons were uninvited
to the apartment, and had intruded when his wife was

ill in bed with the toothache. Among these so-called guests were Samuel Goodman, and his wife, Bessie. Altogether there were some twelve persons present in the apartment at this affair. Defendant expressed no resentment at the intrusion of these persons at first, but soon quarreled with Goodman, whom he had not known before this time, because of his disorderly conduct.

There is evidence on the part of one witness that defendant went to a bureau and took therefrom a gun. Angry words followed between him and Goodman, whereupon Mrs. Goodman induced her husband to leave the apartment. Goodman, his wife, and their friends then started to leave, and when they arrived at the front door a shot was fired from the rear. No one was injured, and the person firing the shot was not identified.

The parties proceeded north on 13th Street to Jefferson Street, where they turned east and approached an alley, which is in the rear of the house where defendant lived, and has an opening on Jefferson Street.

Samuel Goodman and James Adams, one of the persons present in the apartment, were walking ahead of the others, Adams being to the left of Goodman, and on the outside. Bessie Goodman was walking behind her husband, within an "arms-length"; the others followed at a short distance. When Goodman and Adams stepped in front of the alley, two shots were fired from it. Goodman staggered forward and collapsed eight or ten feet beyond that point. One shot entered his chest on the right side, grazing the heart, inflicting a rapidly fatal wound from which he died that night. Adams, walking with Goodman, was uninjured, and ran forward to the help of his friend. Although Goodman was carried immediately to a hospital, he died without making a statement or identification. Mrs. Goodman testified that she looked up the alley and saw the defendant standing near a lamp post; he was alone and was facing towards Jefferson Street. Adams stated that he saw the defendant in the alley facing the fence, and no other person was

there. Neither one of these identifying witnesses perceived a weapon in the hands of the defendant. The other persons in the party testified to the same general facts, but could not identify the person in the alley.

The defendant was arrested at his apartment approximately three hours after the shooting occurred; the detectives making the arrest found that he had retired for the night. A search was made for the gun, but none was found.

The defense was a complete denial of the crime. Defendant admitted that after coming home he had told Goodman not to make so much noise, but denied that he had been in an argument with anyone, that he possessed a revolver, or that any shot was fired by him as the visitors left the apartment. He emphatically stated that he had nothing to do with the fatal shooting, and testified that as soon as the guests had departed he went to bed. In this he was corroborated by his wife.

Much of the evidence presented on defendant's behalf was to the effect that the alley from which the fatal shot was fired was very dark, that the lamp in the alley (which was shown to be located 86 feet from Jefferson Street) at the time of the killing was not lighted. The only other illumination in the neighborhood was an arc light at the corner of 13th and Jefferson Streets. The purpose of this evidence was to attack the credibility of the witnesses for the prosecution by showing that it was so dark in the alley that it was impossible for anyone standing in Jefferson Street to recognize a person standing where the Commonwealth's witnesses said they saw the defendant.

The case resolves itself into a conflict of evidence, which was clearly a question for the jury to decide. On the one hand, there was the positive identification of defendant by two of the Commonwealth's witnesses, and corroboration of the circumstances by three others. The defendant met this evidence by a positive denial of the crime, and was corroborated by his wife.

According to witnesses for the Commonwealth, the deceased was killed by some person who shot him from the alley. This is sustained by the medical testimony that the bullet entered the right side of his body (which was toward the alley) and proceeded to the left side. It was testified that defendant was the only person in the alley at the time of the shooting. If this testimony be true, defendant lay in wait and from his hiding place deliberately shot Goodman as the latter, unsuspecting, passed the mouth of the alley. Under the law this is murder in the first degree: *Com. v. Mulferno,* 265 Pa. 247; see *Com. v. Mondollo,* 247 Pa. 526.

With respect to the nineteen assignments of error on the part of appellant, it may be appropriate to refer to the admonition of Mr. Chief Justice MITCHELL, in *Com. v. Karamarkovic,* 218 Pa. 405, 406, where he said: "Counsel seems to be slow in learning that the multiplication of assignments of error upon trivial points, having no substantial bearing on the merits of the issue, are always injurious to an appellant's case by their inevitable suggestion that the record has been hunted over less to discover real error or injustice than to pick a flaw on which to hang an objection. Assignments of error in criminal cases are particularly open to this inference." The defendant has assigned as error a number of alleged defects in the charge of the court below. We will refer to some of these, although no objection was made at trial by counsel for the defendant to any part of the charge, and the record shows the charge of the court was satisfactory to defendant at the time.

It is contended that it was error for the trial judge to tell the jury that: "The District Attorney has very ably outlined to you the general principles of the law touching the crime of murder," and that a District Attorney "stands as much the defender of the oppressed and innocent as he stands to invoke and to bring the weight of the law against the culprit." It is asserted that this gave the impression to the jury that defendant must be

guilty otherwise the District Attorney would plead for his acquittal. The exact words used by the District Attorney in his address to the jury were not transcribed. We are, therefore, unable to pass upon them. The proper method of procedure for having remarks of the prosecuting attorney placed in the record is set forth by this court in *Com. v. Mika*, 317 Pa. 487. It seems to us that any fair statement of the law would be helpful to the defendant, rather than harmful. We have carefully examined this instruction of the court that the statement so made was "able and fair," and we cannot hold that it was harmful or prejudicial to defendant. Moreover, any misstatement of the law made by the District Attorney could have been corrected by the trial judge had his attention been called to it. It was certainly not error for the court to inform the jury that a District Attorney should consider himself as much a protector of the innocent as a prosecutor of the guilty. We have frequently so held: *Com. v. Nicely*, 130 Pa. 261; *Com. v. Bubnis*, 197 Pa. 542; *Com. v. Mazarella*, 279 Pa. 465; *Com. v. Cicere*, 282 Pa. 492; *Com. v. Williams*, 309 Pa. 529; see also *Com. v. Brown*, 309 Pa. 515, note, page 528.

Defendant argues that the trial judge erred in failing to instruct the jury as to the nature, purpose and probative value of an alibi, and that the defendant need only prove such defense by a preponderance of the evidence. It is true that nowhere in his charge does the trial judge use the word "alibi," and that our cases uniformly hold that where such defense is relied upon, an omission so to charge constitutes reversible error: *Com. v. Stein*, 305 Pa. 567; *Com. v. Barrish*, 297 Pa. 160; *Com. v. Westley*, 300 Pa. 16; *Com. v. Duca*, 312 Pa. 101. But it is clear from these cases that the defense in the instant case is not one of an alibi, which would place defendant in a different place than that of the commission of the crime, and make it physically impossible for him to have committed the crime with which he is charged. While the defendant denied that he was in the alleyway,

nevertheless, it was possible, by reason of the proximity of the alley to his home, for him to have committed the homicide, as charged, and to have returned to his apartment so quickly as to give the appearance that he had remained there. The case turned entirely upon the identification of the man the Commonwealth's witnesses saw standing in the alley; and the jury was properly instructed that, in order to find the defendant guilty, they must be convinced beyond a reasonable doubt—to a moral certainty—that the hand that fired the fatal shot was that of the defendant: See *Com. v. Duca,* supra. We find no reversible error in the charge in this respect.

It is complained that the trial judge removed from consideration of the jury any verdict other than that of first degree murder or acquittal. An examination of the charge shows the contrary is true. The trial judge carefully and fully instructed the jury as to the difference between murder of the first and second degrees, and voluntary manslaughter, and that it was for them to fix the degree of the crime if they found the defendant guilty. Under the circumstances this was sufficient. Here, as in *Com. v. Hadok,* 313 Pa. 110, the sole question was one of identity, and the degree of the crime was not in issue; we there held that in such a situation it is unnecessary to charge the jury as to lesser degrees of homicide. See also *Com. v. Miller,* 313 Pa. 567, and cases there cited.

We have reviewed the charge in connection with the assignment of error that the court unduly stressed the Commonwealth's evidence and did not give sufficient prominence to the contentions of the defendant. There is no merit in this criticism for the charge contains a full and accurate discussion of the defendant's evidence, as well as that of the Commonwealth. We have not counted the words which the court used in referring to each party, but we do not find that they refer at greater length to the proofs on the one side than to those on the other. In *Com. v. Hadok,* supra, in the same connection, we said, (page 115): "As to the contention that the

charge unduly stressed the Commonwealth's evidence, and did not amply cover the testimony presented by the defense, an examination of the charge shows that this argument is little more than a complaint that the trial judge did not argue defendant's cause to the jury." These words may well be applied to this case.

The remaining assignments of error are separated quotations from the charge. The charge must be read as a whole and excerpts therefrom must be read in relation to the context. It cannot properly be separated into parts and these treated piecemeal. See *Com. v. Welch,* 291 Pa. 40; *Com. v. Touri,* 295 Pa. 50; *Com. v. Bryson,* 276 Pa. 566, 571; *Com. v. Johnson,* 279 Pa. 40; *Com. v. Szachewicz,* 303 Pa. 410. We find that the charge was fair and impartial, and fully safeguarded the rights of the defendant.

We have carefully read the evidence to ascertain if the elements of first degree murder are present. The Commonwealth furnished affirmative evidence of all the facts essential to conviction. It was for the jury to say whether its witnesses were to be believed, and whether the identity of the defendant, Glenn, was made clear as the one who fired the fatal shot, or if his denial of any connection with the crime should be accepted. The Commonwealth's evidence is sufficient to support the conclusion reached by the jury, and no error has been pointed out which would justify us in setting it aside. All assignments of error are overruled.

The judgment is affirmed and the record is remitted for the purpose of execution.