## Peiffer *versus* Lytle.

1. Land was conveyed to a husband, the father of the wife paying the purchase-money, which he declared was an advancement. This created a resulting trust in the wife. Per Long, P. J.

2. The land was afterwards·sold; the proceeds belonged to the wife; she had a right to claim them, and require the husband to secure them: *Id.*

3. A husband owning land and owing his wife money, has a right to convey his land in trust to secure her: *Id.*

4. The purchase-money of land conveyed to a husband had been paid by his wife's father as an advancement to her, a verbal agreement between the husband and wife that the land might be conveyed on condition he would secure the proceeds for her, was evidence.

5. Hitner's Appeal, 4 P. F. Smith, 110, remarked on.

May 4th 1868. Before THOMPSON, C. J., STRONG, READ and SHARSWOOD, JJ. AGNEW, J., absent.

Error to the Court of Common Pleas of *Lancaster county* : To May term 1868, No. 4.

This was an action of ejectment, brought to April Term 1866, by Martin B. Peiffer against Samuel S. P. Lytle, for a lot in Mount Joy.

Both parties claimed under Samuel Kohr.

The plaintiff gave in evidence a judgment in his favor against Kohr, entered July 28th 1857, for $1500; scire facias on it, with notice to Peiffer and Hoffer, assignees for the benefit of creditors ·of Kohr, and judgment, February 17th 1864, on verdict for $1940.98. Under executions issued on this judgment, the lot in ·question was sold to the plaintiff for $300, and the sheriff's deed ·acknowledged January 20th 1866.

The plaintiff then rested.

The defendant gave in evidence a deed for the lot, dated April 4th 1857, from Samuel Kohr and wife to A. B. Landis, consider-ation $3800. Deed, June 6th 1857, A. B. Landis to Maria Kohr, wife of Samuel Kohr, consideration $4000. Deed, April 4th 1863, Kohr and wife to Lytle the defendant, consideration $2750.

The defendant here rested.

The plaintiff, in rebuttal, gave evidence that the lot was con-·veyed by Henry Kurtz to Kohr, on the 17th of April 1856; that in 1857 a house and improvements which cost about $4000, were put on the lot under a contract with Kohr. Also, evidence tending to show that in 1857 Kohr was about entering

[Peiffer *v.* Lytle.]

into a new and hazardous business, and was in greatly embarrassed circumstances. Also, that no money passed at the time the deed to Landis was acknowledged: also a bond, dated April 4th 1863, from Jacob Kohr to Lytle the defendant, indemnifying him against damages by reason of any lien that might have been on the lot at the time of his purchase, "or any flaw, irregularity or imperfection" in the title, or by reason of "any recovery of any nature whatsoever against said property": also, notice to Lytle before his purchase of Peiffer's claim.

Plaintiff again rested.

The defendant called Samuel Kohr, and showed a release from himself to Kohr for all claims against witness upon his warranties, and also for all claims against Maria Kohr. It was admitted that Mrs. Kohr was dead, intestate and without issue. The witness was objected to, because he was liable over to Jacob Kohr on his bond of indemnity. The court admitted him and sealed a bill of exceptions.

The plaintiff then asked that witness should be examined on his voir dire, which on objection by the defendant was refused, because the bond of indemnity, which was testimony *aliunde*, had been used to show his interest. The court sealed a bill of exceptions.

The witness testified under objection by the plaintiff, and after the sealing of several bills of exception, substantially as follows:—

His wife was a daughter of Christian Landis, who died in 1855. Landis in 1846 bought a house and lot of Jacob Bard, and paid all the purchase-money. Landis said it was an advancement to the wife of witness; witness promised his wife to keep it for her use; in 1857 he and his wife conveyed the land to George Beimsderfer for $2800, witness promising to secure the money to his wife; he put this money into the Mount Joy property; he received besides in 1856 from his father-in-law's estate $1133 of his wife's money, also, $500 of her money which she had got from her mother, both which sums she agreed to let him have upon the same condition on which he had got the other; for the purpose of securing these sums he conveyed the Mount Joy property to A. B. Landis. It was the understanding all along that he would secure his wife's money.

There was other similar evidence as to the $1133 and the $500, and that A. B. Landis took the conveyance at the request of the wife. There was evidence that at the conveyance to Beimsderfer the wife said nothing about the property being hers.

The plaintiff's points were:—

1. The conveyance of a husband to his wife when he is in debt or about to embark in a hazardous enterprise, is void as against creditors.

[Peiffer *v.* Lytle.]

2. The deed from Kurtz being to Kohr in his own name, the presumption is that it was paid for by his own money and was subject to his debts, unless clearly shown that it was paid for by his wife's money.

3. To protect the property of a married woman from her husband's creditors, she must show not only that she had a separate estate, but that it was used in payment of the property.

4. If the jury find that Kohr used any of his own money in paying for the lot, the verdict should be for the plaintiff, to be released on paying that amount to plaintiff.

The defendant submitted a point which is stated at large in Mr. Justice Read's opinion.

The court (Long, P. J.) affirmed the first three points of the plaintiff with some explanations. To the plaintiff's 4th point he answered:—

" This is correct, if the purchase-money was paid in part by Kohr and part paid by his wife, but if the whole of the purchase-money was paid by money belonging to her, or by the indebtedness of her husband to her out of her separate estate, at the time the property was transferred to Abraham B. Landis, and if he, Landis, was to hold it in trust for her, and such transaction was honest and bonâ fide made to secure her separate estate, then she obtained an absolute estate in the same, and had a right to transfer the same without any conditions."

The defendant's point he answered in the affirmative.

He also delivered the following charge, which is referred to by Judge Read for an explanation of the case:—

" This is an action of ejectment brought to recover from the defendant a house and lot in Mount Joy borough. Both parties claim to hold title under Samuel Kohr. The testimony proves that in 1856 he was possessed of the house now in dispute; that in the year 1857 he conveyed it to Abraham B. Landis, who afterwards transferred the same to Maria Kohr, the wife of Samuel Kohr. On the part of the plaintiff it is alleged that this sale of Kohr to Landis, and by him to his sister, was a fraudulent transaction, and void as to the creditors of Samuel Kohr. In order to have a proper understanding of this case, it will be necessary to refer to the facts, which may be calculated to throw light upon the subject before us. Especially is this necessary in a case like this, when there is an allegation of fraud; because to establish a charge of that kind, and make out a complete chain, to carry conviction to the minds of the jury, it frequently depends upon a number of links. I shall therefore refer to some of those facts.

[" On the 30th of March 1846, Jacob Bard conveyed to Samuel Kohr in consideration of $1400, 5 acres of land in East Hempfield township, in this county, and on the 1st April 1857, Samuel Kohr conveyed the property to George Beimsderfer in considera-

[Peiffer *v.* Lytle.]

tion of $2800.   The defendant, for the purpose of showing that
Samuel Kohr had money in his hands belonging to his wife Maria
Kohr, gave evidence that at the time the property was purchased
from Bard, the purchase-money was furnished by the father of
Mrs. Kohr, amounting to $1400, that it was expressly agreed,
and so declared by her father to be an advancement to her,
that she was to have the property, and that it was to be held for
her by her husband.

"Now if this was the case, if this is clearly established to your
satisfaction, then a resulting trust, vested in the wife, and such
resulting trust, or if the property was sold afterwards, the proceeds
of such sale, would belong to the wife, and she would have a right
to claim the proceeds of her husband and ask him to secure her
for the same.]

"But it is said that there were such circumstances connected with
this sale, as furnish unmistakeable badges of fraud, and go to show
that this property of Bard was not purchased for the use of the
wife, and in support of this it is stated that the title was made
to Samuel Kohr, that he had occupied or had the use of the same,
that when it came to be sold it was advertised as the property
of Samuel Kohr, and that she received a fee for signing the deed,
made to Beimsderfer, and that if any money was paid by her
father at the time of the purchase it was a gift to the daughter.
Now if you are satisfied of the facts, and that it was a gift made to the
daughter and the husband received it as such, the wife could not,
as the law stood at that time, reclaim it from her husband.   But
if the property was bought for the use of the daughter, with
money received from her father for that purpose, and her hus-
band held the same in trust for her, she would be entitled not only
to that property, as I stated before, but also to any advance made
out of the same.   As the law stands now, all money received by
the wife belongs to her; she can hold it independently of her hus-
band and he cannot take it from her.   But even before the exist-
ence of the Married Woman's Law, property could be purchased
for a married woman by a friend with her money, and if that was
the case here and the husband had the title made to him, she would
have the use of it.   I shall now also refer to the other convey-
ances, given in evidence in this case, and particularly to the con-
veyance made by Henry Kurtz to Samuel Kohr in 1856: this was
before the sale made to Beimsderfer of the Bard property which
was on the 1st April 1857; this conveyance of Kurtz to Kohr was
in his own name; whether he held this property in trust for her or
not, it appears to me is not material in the present aspect of the
case.

["If you believe that Samuel Kohr on the 1st April 1857 was
indebted to his wife in a certain sum of money, and he honestly
and for a fair consideration conveyed to A. B. Landis in trust for

[Peiffer v. Lytle.]

his (Kohr's) wife, the property now in dispute, and that this was done for the purpose of securing to the wife, for the money which belonged to him, and was in the husband's hands, it would in my opinion be authorized by law, and the title to her under those circumstances would be valid, and the subsequent title to the defendant would be good.]

"As to the other legal views which I entertain in this case, they will be found in my answers to the several points which have been propounded to me by the plaintiff's counsel, and to the point of the counsel for the defendant. If, however, you should be of the opinion, from the evidence, that the husband was not indebted to his wife as alleged, the defendant would stand in no better situation than the wife herself, because he purchased with notice that his title would be contested. If, however, you find that Mr. Kohr had not such claim as alleged, and that the transfer made to A. B. Landis, and to her, was for the purpose of defrauding her husband's creditors, your verdict should be for the plaintiff."

The verdict was for the defendant.

The plaintiff took a writ of error, and assigned for error amongst other things, the decisions of the court contained in the bills of exception; the answers to the plaintiff's 4th point and to the defendant's point, and the parts of the charge included in brackets.

*D. G. Eshelman* and *D. W. Patterson*, for plaintiff in error.— Independently of the question of interest, the law forbids husband and wife from giving evidence for or against each other: 1 Phill. on Ev. 78; O'Connor v. Majoribanks, 4 M. & G. 435; Hitner's Appeal, 4 P. F. Smith 110; 1 Taylor on Ev. 789; 1 Philips & Arnold 66; 1 Greenleaf Ev. §§ 234, 254; Hasbrouck v. Vandervoort, 5 Seld. 153; 1 Co. Litt. 6 b; Alcock v. Alcock, 12 Eng. L. & Eq. 354; Cornell v. Vanartsdalen, 4 Barr 374; Stein v. Bowman, 13 Peters 221.

The evidence shows that the purchase-money paid by the wife's father was a gift to her, and being before 1848, there could be no resulting trust to her in the land conveyed to the husband: Lynch v. Cox, 11 Harris 265; Cowden v. Oyster, 14 Wright 375.

*N. Ellmaker* and *T. E. Franklin*, for defendant in error, cited as to the resulting trust in the wife: 2 Story's Eq. Jurisp., §§ 1201, 1205; Blanchard v. Ingersoll, 4 Dall. 305, note 1; Beck v. Graybill, 4 Casey 66; Cowden v. Oyster, *supra*. The two sums of money being the wife's, were valid consideration for the conveyance: Mellinger v. Bausman, 9 Wright 522; Grabill v. Moyer, Id. 530.

The opinion of the court was delivered, July 2d 1868, by
READ, J.—The merits of this case are contained in a point

presented to the court by the defendant, and upon which it was requested to charge the jury. The point is in these words: " The court are respectfully asked on behalf of the defendant to charge the jury that if they believe the testimony of Samuel Kohr, that his father-in-law, Christian Landis, purchased a property in East Hempfield township for $1400; that he paid for the same, and had the deed therefor made in the name of his son-in-law, Samuel Kohr, as an advancement for his daughter, Maria Kohr, the wife of the said Samuel Kohr, and to be held by him in trust for his said wife; that the said Maria Kohr afterwards joined with her said husband in conveying the said property for the sum of $2800, and he received the proceeds thereof, promising to secure the same to her by putting it into his property in Mount Joy; and that he also received from her in the year 1856 $1633 of her own money, which she had got from the estate of her father and mother, on his similar promise to the same effect; then these sums constitute a valid consideration for the deed of conveyance of Samuel Kohr and wife to Abraham B. Landis in trust for her, and the subsequent conveyance of Landis to her, vested in her a full and sufficient title to the property independently of her husband's creditors; which title having been conveyed to the defendant, the verdict must be for the defendant."

This point was distinctly affirmed by the court, and the jury found the facts to be as stated, by the verdict.

The title under which the plaintiff claimed originated subsequent to these conveyances vesting the legal and equitable title to the property in Mrs. Kohr, and of course failed, as her husband had no title or claim whatever to it, either at the time the plaintiff obtained his judgment or at the period of the sheriff's sale.

We find no error in the answers of the court to the plaintiff's points, nor in the lucid charge of the learned judge, to which we refer for a full explanation of the case.

These remarks cover the whole case except the exceptions taken upon the trial to the rulings of the court.

The objection to Samuel Kohr, upon whose testimony the case of the defendant depended, was presented in various forms upon being called as a witness; having been released by the defendant, he was objected to by plaintiff because he is liable over to Jacob Kohr in a certain event on the bond of indemnity given by Jacob Kohr to S. S. P. Lytle; bond of indemnity dated April 4th 1863 (and in evidence). The witness was allowed to be sworn, and in this we see no error, as there was no connection proved between the witness and the bond.

Then the plaintiff asked the witness to be examined on his *voir dire*, which was objected to by defendants, and the court disallowed the request, because the bond of indemnity was used by the plaintiff for the purpose of showing that the witness was liable

[Peiffer *v.* Lytle.]

over to Jacob Kohr on that bond, which they think was using testimony *aliunde* to prove him interested. In this the court only followed the rulings of this court in Mifflin *v.* Bingham, 1 Dallas 275, per McKean, C. J.; Gordon *v.* Bowers, 4 Harris 230, per Rogers, J.; Anderson *v.* Young, Exec., 9 Harris 447, per Lewis, J., delivering the opinion of the court.

The plaintiff in his cross-examination of Kohr does not appear to have put any questions to him relative to his interest growing out of his supposed connection with the indemnity-bond given by his brother, but to have relied on his exception to the ruling of the court.

The next is to the testimony given by Kohr in relation " to conversations and agreements between himself and his wife during the existence of the married relation." The exception was taken to the offer by the defendant to prove by the witness the facts stated in it.

The offer was to prove an advancement by his father-in-law to his daughter, the wife of the witness, he at the same time promising to hold it for her; that in the spring of 1857 he and his wife conveyed this property for $2800; that this conveyance was made with the consent of Mrs. Kohr upon the witness promising to hold for her and secure the amount of the purchase-money; that in 1856 Mrs. Kohr received from the estate of her then deceased father over $1100, and that her mother gave her as an advancement over $500, both of which sums she also placed in the hands of her husband, Samuel Kohr, upon the promise to secure and repay her; that all those sums were expended in the purchase and improvement of the property in dispute; and that the conveyance of the 4th April 1857, to A. B. Landis, was in trust, and the conveyance of A. B. Landis June 6th 1857, was in performance of his engagement to his wife.

Now out of the whole of this offer, the only portions which could have been communications between man and wife are the promises to secure the advancement and its proceeds and the subsequent sums of the wife's property, received after her father's death for her. All the rest is a simple statement of facts. No part of the offer bears any mark of a confidential communication never to be disclosed by either husband or wife although the marriage relation be dissolved by the death of either.

" The prohibition," says Judge Rogers, in Cornell *v.* Vanartsdalen, 4 Barr 374, " where she is a competent witness, being divested of all interest, extends to confidential communications, or such as come to her knowledge from her domestic relation. In the case in hand it is difficult to imagine in what respects any confidential communication is divulged or any domestic confidence abused."

It is difficult, therefore, to conceive that the whole of this testi-

mony was not strictly competent in a case where the wife having sold the property to the defendant was dead, leaving no issue, and neither her husband, nor of course she herself, any party to the suit, and the witness himself being a competent witness and entirely disinterested. In Hitner's Appeal the evidence excluded was cohabitation, a matter entirely confined to the husband and wife, and upon this point two of my brethren dissented, and I am certainly not willing to extend it to the present case. There is nothing in the 1st error assigned, nor in any of the errors not already noticed.                                                 Judgment affirmed.