OCTOBER AND NOVEMBER TERM, 1881, No. 121.

# Appeal of John Robb *et al.*

1. The disqualification of a wife to testify against the estate of her husband is restricted to communications of a confidential nature, and does not embrace ordinary business transactions and conversations in which others have participated.

2. The findings of facts upon which decrees, either in the Orphans' Court or Court of Common Pleas, are based are not reversible in the Supreme Court unless they are specially assigned as error.

3. A decree will be affirmed though the Court below took no notice of the defence of the statute of limitations, which barred a portion of the claim, the balance of the claim being sufficient to justify the decree.

APPEAL of John Robb, Alexander Robb, Mary Robb, Martha Robb, William Robb, and Adam Robb, from the decree of the Orphans' Court of *Allegheny County*, making distribution of the proceeds of the real estate of David Robb, deceased.

David Robb died September 10th, 1877, intestate, owning certain real and personal estate. He left a widow but no

children, and his father and mother had been dead for several years. Jane Robb, his widow, took out letters of administration on the estate, and subsequently filed her account, showing a balance in her hands of $1473.70, proceeds of the real estate.

Before the Court below, HAWKINS, P. J., a claim of Mary Stein, a sister of the accountant, was presented for wages. Jane Robb, the accountant, testified as to this claim under objection, as to her competence, in substance as follows:

My sister was living with Mrs. Dean in Allegheny. She was getting $3 a week wages there. I was sick; I had poor health and we sent for her. The arrangement was made. Mr. Robb said we had to have some help, and we might as well pay her as a stranger, and she would be better in the house. He knew the wages she was getting at Dean's, and he said he was willing to pay her whatever she got from strangers. She came. She gave up her situation. Mrs. Dean came over to see whether Miss Stein was coming back, and she said if she would come back she would give her half a dollar more. She came in the fall of 1869, and she was there all the time until Mr. Robb died. During all that time neither Mr. Robb nor I paid her any wages. She didn't need it, she said she didn't care, and he let it go on. She did everything. She attended to the house and did all the work. She did all the washing, and we had a good bit. She attended to the cows and stable, and milked and everything.

Upon cross-examination the witness said:

" This bargain was made when she came there. We made a specific bargain to give her $3 a week. Then Mrs. Dean came over and offered her $3.50, and Mr. Robb said she was worth all to us she was to anybody else."

There was no other testimony.

Counsel for the brothers and sisters of David Robb objected to all that part of the claim which accrued more than six years before the death of the decedent.

The Court found the facts as follows:

" In October, 1869, Mary Stein was employed in the family of John Dean, Esq., at $3 per week. She was induced to leave Mr. Dean to engage in the service of Mr. Robb, whose wife was her sister, and in poor health, and she remained there until his death. Mr. Robb agreed to pay her at the rate of $3 per week when she first went to service for him, but subsequently increased her wages to $3.50 per week. He paid her nothing, and no demand was made. The matter was, however, discussed, and the contract was distinctly recognized as in existence. She did not need the money and he was allowed to have the use of it. There is no doubt

she earned the wages promised her. She did all kinds of work, from cooking to cleaning the stable. Mrs. Robb already was in poor health when her sister came and continued, and Mr. Robb was also in bad health for two or three years before his death. Practically, Miss Stein had both of them to take care of, and all the work about to do, and did it faithfully."

The Court filed an opinion in which it said, *inter alia :*

" Mrs. Robb was clearly competent to testify to the contract made between her husband and sister. Her exclusion as a witness is limited to confidential communications, and this was not of that nature : Peiffer *v.* Lytle, 58 Pa. St. Rep., 386."

It awarded the balance of $1466.70 remaining after payment of costs to Mary Stein on account of her claim and interest.

From this decree the brothers and sisters of David Robb appealed, assigning as errors :

1. The Court erred in admitting Jane Robb, widow of decedent, as witness to testify against the estate of her deceased husband.

2. The Court erred in overruling the defence of the statute of limitations.

3. The Court erred in decreeing $1466.70 to the claim of Mary Stein, that sum being over $300 in excess of her whole claim as presented by her, including debt, and interest to the date of decree.

4. The Court erred in allowing interest on appellee's claim.

5. The Court erred in decreeing any portion of the fund to the claim of Mary Stein for wages.

*Whitesell & Son* and *Weir & Gibson* for the appellants.

At common law husband and wife cannot testify against each other. The rule is founded on public policy. It is not dissolved by death: Monroe *v.* Twisleton, Peake's Add. Ca., 220 ; O'Connor *v.* Majoribanks, 4 M. & G., 435 ; Hitner's Appeal, 54 Penna. St., 117.

All the facts the witness testified to she learned from her husband during coverture in consequence of her domestic relations. The statute of limitations began to run against the wages at the end of each week.

*Thomas M. Marshall* for the appellee.

The witness testifies to hearing a contract made between her husband and a third party. It was not a confidential communication : Peiffer *v.* Lytle, 8 P. F. Smith, 392 ; Cornell *v.* Vanartsdalen, 4 Barr, 374.

If the wages were due and payable weekly, the interest payable from the end of each week exceeds the amount awarded.

The opinion of the Court was delivered, October 31st, 1881, by STERRETT, J.:

It is contended that on grounds of public policy the widow of the decedent was incompetent to testify to the contract on which appellee's claim for wages is based; that the disqualification incident to coverture continued after the death of her husband, and is not limited to what occurred in their confidential intercourse, but extends to all facts and transactions which came to her knowledge during their marital relations. While the principle, thus broadly stated, has sometimes been recognized, the better and more generally received opinion is that the disqualification is restricted to communications of a confidential nature, and does not embrace ordinary business transactions and conversations in which others have participated. This seems to be the principle recognized in our own cases: Cornell *v.* Vanartsdalen, 4 Barr, 364; Peiffer *v.* Lytle, 8 P. F. Smith, 386. The Orphans' Court, adhering to this view of the law, permitted the widow to testify to conversations between her husband, herself, and the appellee, which resulted in a contract of hiring. In pursuance of which the latter entered the service of Mr. Robb in October, 1869, and continued therein until his death, on September 10th, 1877. These conversations, as shown by the testimony, are not, in any proper sense of the term, confidential communications, and there was, therefore, no error in permitting the witness to testify.

From the evidence properly before him, the learned judge found, among other things, that when the appellee first entered the service of the decedent, he agreed to pay her three dollars per week, " but subsequently increased her wages to three dollars and a half per week. He paid her nothing and no demand was made. The matter, however, was discussed, and the contract was distinctly recognized as in existence. She did not need the money, and he was allowed to have the use of it." In the absence of any exception to the finding of these or any other facts in the case, it must be conclusively presumed that the appellee entered the service of the decedent under a contract for wages at $3.00, which was shortly afterwards increased to $3.50 per week. That while the existence of the contract relation was distinctly recognized, she neither demanded nor received any of her wages, but, for the reason stated, permitted the same to remain in the hands of her employer for his use and benefit. These

[Appeal of John Robb *et al.*]

facts necessarily led to the conclusion that the appellee's claim against the estate exceeded the net balance for distribution, and in the absence of any other valid claim, the whole fund was awarded to her on account. In other words, the decree is based upon and fully sustained by the facts distinctly found by the auditing judge, and not excepted to or assigned for error. The finding of facts upon which decrees, either in the Orphans' Court or Court of Common Pleas, are based, are not reversible here unless they are specially assigned as error.

Aside from the evidence of an express contract which was found by the Court, the testimony returned with the record, but not printed in full by the appellants, clearly shows that the services rendered by the appellee, from October, 1869, to the death of Mr. Robb, were reasonably worth at least $3.50 per week. It was shown that in addition to her general household duties, she did all the family washing, attended to the cows, and at times cleaned the stable, and rendered other services outside the ordinary work of a female domestic. The lowest estimate placed on the value of her services by any of the trustees is $3.50 per week.

The complaint in the second assignment is that " the Court erred in overruling the defence of the statute of limitations." If in point of fact this was done, it would be error upon the facts of the case as disclosed by the testimony. The statute of limitations was undoubtedly a bar to so much of appellee's claims as was due and payable more than six years prior to the death of the intestate. In other words, her right to recover was limited to the six years' services immediately preceding his death, with the interest thereon from the time her weekly wages were due and payable. The Court found that shortly after the original contract was made her wages were increased to $3.50. At that rate her claim including interest would be about one hundred dollars more than the net balance for distribution. This was doubtless the reason why the Court took no notice of the defence under the statute of limitations. It was apparent that her claim for that portion of her services not barred by the statute, computed according to the terms of the contract, would exceed the fund for distribution, and, therefore, the question as to the bar of the statute became wholly immaterial.

There is nothing in any of the assignments of error that requires further notice.

Decree affirmed, and appeal dismissed at the cost of the appellants.