Opinion by
 

 Keller, P. J.,
 

 The use plaintiff, Edward Anderson, when a boy six years old, was apprenticed or indentured to John W. Dalbey, of Clarksville, Greene County, by the Directors of the House of Employment and Support of the Poor of Greene County, for the term of fifteen years, by an agreement, under seal, dated November 9, 1899, wherein the said John W. Dalbey covenanted and agreed that he would give the boy a good common school education and provide him with sufficient food, boarding, lodging, clothing, and other things necessary for his health and comfort, and upon the expiration of said term would give him a horse, saddle and bridle and a good suit of clothes, or their value in money. This was an action in assumpsit brought upon that sealed instrument to recover for Edward Anderson the value in money of said horse, saddle and bridle and suit of clothes. Under the decision in
 
 Concrete Products Co. v. United States F. & C. Co.,
 
 310 Pa. 158, 165 A. 492, Edward Anderson had an enforceable right of action.
 

 It appeared in evidence that Edward Anderson lived with John W. Dalbey and
 
 the Dalbey family,
 
 mentioned in the deed of indenture, until April, 1909, when John
 
 *373
 
 W. Dalbey, having married again, removed from the house where he and his family lived with the boy, and moved with his wife to a house across the street and set up housekeeping there, leaving the boy with the rest of the family, — his daughter, son-in-law et al., — , in the old home.
 

 John W. Dalbey died on March 12,1934, and Edward Anderson, having shortly thereafter learned of the indenture and the terms thereof, and claiming that the horse, saddle and bridle and suit of clothes, called for by the indenture, had not been given him at the expiration of the term, by his attorney, promptly notified the administrators of the Estate of John W. Dalbey, through their advertised attorneys, and made demand of the Estate for the value in money of the horse, saddle and bridle and suit of clothes he should have received on November 9, 1914; and on their failure to pay said claim brought this action in assumpsit against Dalbey’s administrators, and had it duly indexed in the Prothonotary’s Office of G-reene County, in accordance with the provisions of section 15 of the Act of June 7, 1917, P. L. 447, and section 1 of the Act of June 7, 1919, P. L. 412.
 

 The case was tried and submitted to a jury which rendered a verdict in favor of the plaintiff, Anderson, for $545.78. The main defense relied upon at the trial was the presumption of payment. A point for binding instructions in favor of the defendants having been presented and refused, they obtained a rule for judgment non obstante veredicto, which, after argument, the court made absolute. The judgment will have to be reversed. The only question is whether: a new trial should be granted or judgment entered on the verdict.
 

 In his opinion entering judgment non obstante veredicto for the defendants the trial judge said: “As we see it the jury have disposed of all the facts of the case and under the verdict of the jury the said Edward
 
 *374
 
 Anderson is entitled to a judgment for the amount of the verdict rendered in his behalf provided there was enough competent evidence taken before the jury to sustain such verdict.”
 

 He then went on and held that Zella Dalbey, the widow of John W. Dalbey, who had been called as a witness by Anderson to prove that John W. Dalbey had not paid him the money value of the horse, saddle and bridle and suit of clothes, and who had testified that John W. Dalbey had told her that he had not done so, was not a competent witness, and, with her testimony excluded, there was not sufficient evidence to overcome the presumption of payment, and therefore entered judgment non obstante veredicto for the defendants.
 

 The difficulty with this ruling is that in entering judgment non obstante veredicto under the Act of April 22, 1905, P. L. 286, the judgment must be entered upon the evidence in the record in the court below as it existed at the close of the tidal:
 
 Dalmas v. Kemble,
 
 215 Pa. 410, 64 A. 559. If upon consideration of the whole evidence “it shall appear that a binding direction for either party would have been proper
 
 at the close of the trial,
 
 the court may enter judgment later with the same effect”: Ibid, p. 413. But,, “The court can neither eliminate evidence which may have been improperly admitted, nor insert offers of evidence which should have been admitted but were excluded; the remedy in either case is a new trial”:
 
 Mincy v. Washington Natl. Ins. Co.,
 
 130 Pa. Superior Ct. 285, 295, 196 A. 893. To the same effect, see
 
 Ozanich v. Metropolitan Life Ins. Co.,
 
 119 Pa. Superior Ct. 52, 55, 180 A. 67;
 
 Ellsworth v. Husband,
 
 119 Pa. Superior Ct. 245, 253, 254, 255, 181 A. 90;
 
 Squire v. Merchants’ Warehouse Co.,
 
 130 Pa. Superior Ct. 8, 14, 196 A. 915.
 

 But on full consideration we are of opinion that the court did not err in admitting the testimony of Mrs. Dalbey in evidence,
 

 
 *375
 
 When Mrs. Dalbey was called as a witness by the plaintiff and an offer was made to prove that she lived with John W. Dalbey from April, 1909 to the day of his death, and was acquainted with his affairs and transactions, and that during the time she lived with him he did not deliver to Edward Anderson, the plaintiff, a horse, saddle and bridle and a good suit of clothes, or their value in money; and that Mr. Dalbey told her in his lifetime that he had not given Edward Anderson a horse, saddle and bridle and good suit of clothes or their equivalent in money; the only objections made by defendants’ counsel to the offer were (1) That this claim is an action against the decedent’s estate, the presumption of payment has arisen and the statute of limitations is applicable, and the testimony of this witness is therefore incompetent, irrelevant and immaterial to this action; (2) we object to the offer unless the time is fixed when John W. Dalbey is alleged to have made this statement to Zella Dalbey; and (3) that even though John W. Dalbey had admitted to Zella Dalbey that he had not complied with the terms of this contract, it would not give any right of action thereon to Edward Anderson, the plaintiff in this case. No objection was made that the statement of John W. Dalbey to his wife, Zella Dalbey, was a confidential communication excluded by the Act of May 23, 1887, P. L. 158, sec. 5(b). That objection was first raised after the trial, on the motion for judgment non obstante veredicto. And the court below citing
 
 Danley v. Danley’s Exrs.,
 
 179 Pa. 170, 174, 36 A. 225, pointed out that “A party complaining on appeal of the admission of evidence objected to in the court below will be limited to the specific objection made to it at the trial, and this rule is not changed by the fact that the objection urged on appeal was made at the argument for a new trial” [Syl. 2]. To the same effect, see
 
 Messmore v. Morrison,
 
 172 Pa. 300, 304, 34 A. 45;
 
 Murray v. Frick,
 
 277 Pa. 190, 195, 121 A. 47;
 

 
 *376
 

 Ott v. DuPlan Silk Corp.,
 
 271 Pa. 322, 329, 114 A. 630;
 
 Aland v. Pyle,
 
 263 Pa. 254, 257, 106 A. 349;
 
 Roebling’s Sons Co. v. American A. & C. Co.,
 
 231 Pa. 261, 271, 80 A. 647;
 
 Morgan v. Gamble,
 
 230 Pa. 165, 174, 79 A. 410;
 
 Benner v. Fire Assn.,
 
 229 Pa. 75, 88, 78 A. 44. The court, however, felt constrained to follow the rule enunciated in
 
 Ulrich’s Case,
 
 267 Pa. 233, 238, 109 A. 922, where it was held that a wife is not a competent witness in a proceeding under the Act of May 4, 1855, P. L. 430, to have herself declared a feme sole trader,
 
 [1]
 
 on the ground that her husband had deserted her; and, in reviewing the question of the sufficiency of the evidence in such case, the testimony of the wife cannot be considered although no objection was made against her testifying, because section 5(c) of the Act of May 23, 1887, P. L.. 158, declares “not only that husband and wife shall be incompetent but shall not be permitted to testify against each other”; and this provision “is one 'of which both the parties to the suit, and the trial judge as well, are bound to take notice. Connivance by the parties cannot evade it, nor can indulgence by the court’:
 
 Canole v. Allen,
 
 222 Pa. 156, 159” [p. 238]. But section 5(c) of the Act of 1887, which was under consideration in the Ulrich case, applies only where husband and wife are both living. The language of the clause clearly implies it and is inapplicable to a case where one of them is dead.
 
 [2]
 
 In
 
 Dumbach v. Bishop,
 
 
 *377
 
 183 Pa. 602, 609, 39 A. 38, an action of ejectment
 
 py
 
 a wife to recover land standing in the name of her deceased husband, but which she claimed had been paid for with her money, the wife was held to be a competent witness, under the Act of June 11, 1891, P. L. 287, to testify to a transaction which a witness for the defendants described as occurring when he, the plaintiff and her husband were present; and the court said (p. 609): “The Act [of 1891] is, of course, general, and applies to all persons, without any mention of persons affected by the marital relation. It may be conceded that such persons might not be included Avithin the capacitating provisions of the act if they were otherwise incapacitated by reason of the special relation. But on that subject the authorities are very clear that the death of one of the parties having dissolved the relation, only confidential communications passing between the parties while the relation continued, are excluded.
 
 The aet of 1887 relates only to living husbands and wives,
 
 and makes no provision in the case of the death of either. The clauses
 
 b
 
 and c of the fifth section are the ones that apply to this relation. Clause c says nothing about it.” (Italics supplied.) In
 
 Robb’s
 
 Appeal, 98 Pa. 501, a servant presented a claim before an auditor, in the distribution of a decedent’s estate, for services rendered to the decedent in his lifetime, and called the widow to testify an support of her claim. She was admitted as a witness, after objection to her competency, in the court below, and the Supreme Court sustained her competency. Mr. Justice Sterrett, afterwards Chief Justice, delivering the opinion said: “It is contended that, on grounds of public policy, the widow of the decedent was incompetent to testify to the contract on which appellee’s claim for wages is based; that the disqualification incident to coverture continued after the death of her husband, and is not limited to what occurred in their confidential intercourse, but extends to all facts
 
 *378
 
 and transactions which came to her knowledge during their marital relations. While the principle, thus broadly stated, has sometimes been recognized, the better and more generally received opinion is) that the disqualification is restricted to communications of a confidential nature, and does not embrace ordinary business transactions and conversations in which others have participated.” After stating that the court below admitted the widow’s testimony to conversations between her husband, herself and the appellee, which resulted in a contract of hiring, the opinion proceeds, “These conversations as shown by the testimony are not in any proper sense of the term confidential communications and there was therefore no error in permitting the witness to testify.” In
 
 Stephens v. Cotterell,
 
 99 Pa. 188, speaking through Mr. Justice Mekcuk, the court said: “The mere fact that Mrs. Stephens was called to testify against the interest of the estate of her deceased husband did not make her incompetent. She is competent to testify to facts which came to her knowledge otherwise than through the confidential relations existing between her and her husband.” This court held in
 
 Hood v. Prudential Ins. Co.,
 
 22 Pa. Superior Ct. 244, 248, that a wife was a competent witness in a suit on a life insurance policy by the executor of her husband, the insured, to prove that her husband suffered from consumption prior to the issuance of the policy, unless her information on the subject was acquired through a confidential communication from him. In
 
 Hayes’s Est.,
 
 23 Pa. Superior Ct. 570, 575, this court said: “The reason for the rule of the common law which forbade husband or wife to give testimony tending to criminate the other, although not a party to the suit, was the disturbance of the marital relation which would result from the admission of such testimony.
 
 Upon the termination of that relation by the death of one of the parties the reason of the rule ceases,
 
 except as to confidential
 
 *379
 
 communications, and the rule itself as applied to such a case, has not been established or preserved by the act of 1887. The precise question did not arise in
 
 Dumbach v. Bishop,
 
 183 Pa. 602, but the foregoing conclusion is in harmony with the reasoning of the court in that case.” (Italics supplied.) And in
 
 Strause v. Braunreuter,
 
 4 Pa. Superior Ct. 263, a wife, after the death of her husband, was held a competent witness to prove facts coming to her knowledge from sources other than confidential communications from him, and could testify that she was a mere surety on the note signed by her husband and herself. President Judge Rice said (p. 267): “Nor was she an incompetent witness under clause (c) [of Section 5 of the Act of 1887]. What she proposed to testify to was in no sense a confidential communication, and the common law rule which prevents the husband or wife from divulging in testimony such communications after the death of the other does not apply. The wife after the death of the husband is competent to prove facts coming to her knowledge from other sources, and not by means of her situation as a wife, notwithstanding they related to the transactions of her husband: 1 Gr. Ev. sec. 338, (15th ed.);
 
 Cornell v. Vanartsdalen,
 
 4 Pa. 364;
 
 Peiffer v. Lytle,
 
 58 Pa. 386;
 
 Robb’s Appeal,
 
 98 Pa. 501. The defendant was a competent witness, and her testimony going to show that she was a mere surety on the note should have been received.” In
 
 Com. v. Bricker,
 
 74 Pa. Superior Ct. 234, a husband was held competent to testify in a prosecution against a physician for abortion resulting in the death of the witness’ wife, where he divulged no confidential communications. The
 
 acts
 
 of the wife in her dealings with the physician were not protected by the privilege of confidential communications.
 

 It must also be remembered that the Act of May 23, 1887, supra, is an enabling act. Under it, witnesses are made competent to testify unless excluded by its pro
 
 *380
 
 visions. Differing from the rule in force at common law, the privilege of excluding confidential communications between husband and wife may now be waived. The statute (clause (b) of section 5) expressly so provides: “Nor shall husband and wife be competent or permitted to testify to confidential communications made by one to the other,
 
 unless this privilege be waived upon the trial.”
 
 Following the cases of
 
 Cornell v. Vanartsdalen,
 
 4 Pa. 364, 374, and
 
 Peiffer v. Lytle,
 
 58 Pa. 386, 392, a wife had even before the' Act of 1887, been permitted to testify as to facts, relating to her husband’s transactions, which came to her knowledge apart from confidential communications, and therefore without any abuse of domestic confidence. In the last-named case the court said: “Now out of the whole of this offer, the only portions which could have been communications between man and wife are the promises to secure the advancement and its proceeds and the subsequent sums of the wife’s property, received after her father’s death for her. All the rest is a simple statement of facts. No part of the offer bears any mark of a confidential communication never to be disclosed by either husband or wife although the marriage relation be dissolved by the death of either.” In
 
 Seitz v. Seitz,
 
 170 Pa. 71, 32 A. 578, a wife was permitted, in an action of divorce against her husband, to testify as to declarations made by her husband to her as to his relations with the corespondent, the court saying: “It has been argued that the statements made by the respondent were properly excluded on the ground that they were confidential communications. Whether a communication is to be considered as confidential depends upon its character as well as upon the relation of the parties. It is essential that it should be made in confidence and with the intention that it should not be divulged. The privilege is based upon considerations of public policy, as in the case of husband and wife to preserve the peace, har
 
 *381
 
 mony and confidence of their relations, and in the case of attorneys and client to secure the unreserved communication which the ends of justice require. If not made because of the relation of the parties and in the confidence which that relation inspires and which it is the policy of the law to hold inviolate, it is not privileged.” See also
 
 Com. ex rel. Berardino v. Berardino,
 
 96 Pa. Superior Ct. 288, 290, 291. The privilege may be claimed by the witness spouse (4 Wigmore on Evidence, sec. 2241, p. 786 (2d Ed.)), and may be waived by her, and the waiver may be express or implied. 4 Wigmore on Evidence, sec. 2242, p. 788 (2d Ed.). This is in line with the ruling in
 
 Danley v. DAnley’s Exrs.,
 
 supra.
 

 We are of opinion that if the statement of the husband, as testified to by the wife, was a confidential communication, in the light of the foregoing cases, the privilege was waived, (1) by the failure of the wife to claim it; (2) by the failure of the defendants, in stating their objections to the offer of Mrs. Dalbey’s testimony, to include, as ground for objection, that it was a confidential communication between husband and wife.
 

 As to the evidence which may satisfy the jury that the payment relied upon as a ¡defense was not made, subsequent decisions have not improved on the language of Mr. Justice Sergeant in
 
 Foulk v. Brown,
 
 2 Watts 209, 214, 215, as follows (omitting citations): “After a lapse of twenty years, bonds and other specialties ......legacies, mortgages, judgments, and indeed all evidences of debt excepted out of the statute, are presumed to be paid.......The court will not encourage the
 
 laches
 
 and indolence of parties, but will presume, after a great length of time, some composition or release to have been made.......This length of time does not operate as a positive bar, but as furnishing evidence that the demand has been satisfied.......But it is evidence from which, when not rebutted, the jury is bound to draw a conclusion, though the court cannot.
 
 *382
 
 ......Within the twenty years, the
 
 onus
 
 of proving payment lies on the defendant; after that time it devolves on the plaintiff to show the contrary, by such facts and circumstances as will satisfy the minds of the jury that there were other reasons for the delay of the prosecution of the claim than the alleged payment. And if these facts are sufficient satisfactorily to account for the delay, then the presumption of payment, not being necessary to account for it, does not arise. Slighter circumstances are sufficient to repel the presumption than are required to take the case out of the Statute of Limitations, the latter being a positive enactment of the legislature, the former merely an inference on which legal belief is founded. The rule in regard to the Statute of Limitations......that when the time has begun to run, it suffers no interruption from the occurrence of circumstances that would otherwise prevent its application, does not, it is said, apply to the case of a legal presumption ...... Still the circumstances, whatever they may be, must account in some reasonable way for the lapse of time, without demand or suit.
 
 The party’s ignorance of his right;......a demand without suit,
 
 and generally any circumstance explaining satisfactorily why an earlier demand has not been made.” ( Italics supplied). To the same effect, see
 
 Sheafer v. Woodside,
 
 257 Pa. 276, 101 A. 753, where Mr. Justice Frazer cited and quoted with approval
 
 Foulk v. Brown,
 
 supra, and continued (pp. 281, 282) : “In
 
 Reed v. Reed,
 
 46 Pa. 239, 242, it was said: ‘The presumption is rebutted, or, to speak more accurately, does not arise where there is affirmative proof beyond that furnished by the specialty itself that the debt has not been paid, or where there are circumstances that sufficiently account for the delay of the creditor.’ ...... ‘Any competent evidence which tends to show that the debt is in fact unpaid is admissible for that purpose. The evidence may consist of the defendant’s admission
 
 *383
 
 made to the creditor himself,
 
 Eby v. Eby’s Assignee,
 
 5 Pa. 435; or to his agent or even to a stranger:
 
 Morrison v. Funk,
 
 23 Pa. 421;
 
 Reed v. Reed,
 
 46 Pa. 239;...... It is of no consequence that the admission of nonpayment is accompanied by refusal to pay; the action is not founded on a promise, but on the original indebtedness; the question, as against the presumption, is whether or not the debt is in fact unpaid.’ ”
 

 We are of opinion that there was sufficient competent evidence to justify the submission of the case to the jury and warrant their finding that notwithstanding the lapse of twenty years, the debt had not, in fact, been paid.
 

 There is no evidence in the record that the indentured apprentice had not faithfully served Dalbey “according to his power and ability” and did not “honestly and obediently in all things demean and behave himself towards John W. Dalbey and said Dalbey family” or that he had refused to perform any reasonable order of said John W. Dalbey during the continuance of said term.
 

 The seventh assignment of error is sustained. The judgment is reversed and is now entered for the plaintiff, Edward Anderson, on the verdict.
 

 [1]
 

 Changed by the Act of May 10, 1927, P. L. 861.
 

 [2]
 

 “Section 5(c). Nor shall husband and wife be competent or permitted to testify against each' other, except in proceedings brought by a wife to be declared a feme sole trader, and except also in those proceedings for divorce in which personal service of the subpoena or of a rule to take depositions has been made upon the opposite party, or in which the opposite party appears and defends, in which ease either may testify fully against the other, and except also that in any proceeding for divorce either party may be called merely to prove the fact of marriage,” as amended by the Act of May 10, 1927, P, L. 861.