### UNITED STATES of America
### v.
### Luther LEWIS, Jr.
### Crim. A. No. 73–60.

United States District Court,
W. D. Pennsylvania.

June 20, 1973.

David Curry, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

John J. Kirk, Pittsburgh, Pa., for defendant.

## I. DISCUSSION

SNYDER, District Judge.

On March 1, 1973, the Grand Jury returned a seven count Indictment against Luther Lewis, J. and Glenwood Richardson. Count one charged defendants Luther Lewis, Jr. and Glenwood Richardson with conspiracy to violate Section 495 of Title 18, United States Code relating to forging or uttering writings with the intent to defraud the United States. Numerous overt acts were charged against the named defendants and also one Ida Lewis, a co-conspirator but not a defendant in this action. These were:

"1.  On or about the 3rd day of October, 1967, IDA LEWIS received United States Treasury Check No. 38,040,874 dated October 3, 1967, in the sum of $128.70 payable to Mike Honick, 1834 Willow Street, McKeesport, Pennsylvania, from defendant GLENWOOD RICHARDSON, the said IDA LEWIS then forged the endorsement of the payee and uttered said check, bearing said forged payee endorsement to and upon the Peoples Union Bank & Trust Company of McKeesport, Pennsylvania."

"2.  On various dates during the months of October, 1967, November 1967, December 1967, January 1968, February 1968, and March 1968, in the Western District of Pennsylvania, defendants GLENWOOD RICHARDSON, JR. and LUTHER LEWIS, JR. did meet and steal United States Treasury checks from mail boxes and, together with co-conspirator IDA LEWIS, did forge payee endorsements on said checks and utter and publish said checks bearing said forged payee endorsements to and upon various commercial and banking institutions."

"3.  On various dates during the months of October 1967, November 1967, December 1967, January 1968, February 1968, and March 1968, defendant LUTHER LEWIS, JR. transported defendant GLENWOOD RICHARD-

SON, JR., to various shopping centers in the Western District of Pennsylvania for the purpose of aiding and abetting defendant GLENWOOD RICHARDSON, JR., in the cashing of stolen United States Treasury checks, defendant LUTHER LEWIS, JR., knowing the said checks to have been stolen."

Counts two through six charge defendant Richardson with the substantive violations of 18 U.S.C. Section 495; defendant Richardson is a fugitive and the case was tried non-jury only as to defendant Lewis.

The prosecution called three witnesses during the course of the proceedings. These were Ida Elizabeth Owens, the alleged co-conspirator, who lived with the defendant from 1965 to 1967 (Tr. pp. 6–7); Daniel E. Mayer, the investigative agent of the United States Secret Service; and Frank J. Flit, a special investigator of the Pittsburgh Postal Inspector's office.

Much of the testimony concerned the validity of the marriage of Ida and Luther Lewis. We make a finding of fact that no valid marriage existed between Luther and Ida. The reasoning of the Court will follow in the attached Memorandum of Law. Therefore, since no valid marriage existed, no marital privilege existed and Ida was competent to testify against Luther.

Ida Owens Lewis testified, in substance, that Luther Lewis, Glenwood Richardson and she participated in an operation whereby government checks, i. e., social security checks and income tax checks were stolen from mailboxes, signed by one of the defendants and cashed in banks, supermarkets or grocery stores. The defendants would purchase wallets from five and ten cent stores and use the false identification to cash the checks and then they would split up the cash between them. (Tr. pp. 10–12). Specifically she said that on or about March 2, 1968, Luther Lewis stole a government check from a mailbox which was made payable to Mary Taylor of 8139 Connemaugh Street, Pittsburgh 21, Pennsylvania. (GX 2) Ida endorsed this check but on learning that someone saw Luther take the check, she then placed it back in a mailbox. (Tr. p. 18).

Daniel E. Mayer testified that Luther Lewis voluntarily confessed to him his involvement in the check cashing scheme. (Tr. pp. 46–49–50). See also GX 3, 4, and 5. He stated that:

"He (Luther) made a verbal statement to myself and Agent Swivel, basically, that he had been engaged in the cashing of checks with Ida Lewis and with Glenwood Richardson. At that time he didn't want to give a written statement."

Later, this statement was reduced to writing and signed by Luther Lewis, Jr. (Tr. p. 48).

Frank J. Flit, the last prosecution witness, is a special investigator with the Pittsburgh Postal Inspector's office. His duties include the investigation of lost or stolen U.S. Treasury and Pennsylvania State Welfare checks, etc. (Tr. p. 66). He testified that the procedure on dispersing social security checks is to mail the checks a day or two prior to the date that said checks can be negotiated. The Post Office then disperses said checks so that they will be received by the payee on the date that these checks can be negotiated. (Tr. pp. 66–67).

Mr. Flit testified on cross examination that:

"Q. (C)onceivably, a check then dated on March 2nd, may have been taken from the Post Office itself either February 28, or 29, as the case may be, is that correct?"

"A. That is correct."

Since the check made payable to Mary Taylor was dated March 2, 1968, Mr. Flit explained that the normal date for payment of social security checks is the third of the month, however, if the third is a Sunday, for the convenience of the payee, the checks are dated the second and sent out a day earlier. (Tr. p. 69).

Since March 3, 1968 was a Sunday, the social security checks were dated March 2, 1968.

After the testimony of Mr. Flit, the prosecution then rested its case. Defense Motion for Judgment of Acquittal was denied; defendant then took the stand in his own behalf.

Luther, himself, testified:

"Q. Did you steal any of them from the mailboxes?"

"A. I was arrested for stealing a check from a mailbox. I was convicted and I am probation."

"Q. What were you going to do with the check, were you going to take it home and have your wife endorse it and cash it or were you going to do it yourself, or what?"

"A. At the time I am trying to think of what happened. I think at the time that I attempted to steal a check from the mailbox I was caught." (See Tr. pp. 81–82).

but he denied on direct examination that he ever saw Government Exhibit 2, i. e., the government check made payable to Mary Taylor. Further, he testified that he left Pittsburgh to go to Cleveland on a Friday after he was seen taking a check from a mailbox. He did not know exactly when in 1968 this occurred but he stated that it could have occurred in March of 1968. (Tr. p. 83).

On cross examination, Luther testified:

"Q. The last part of '67 and the first part of '68 you were working checks with Glenwood and Ida, weren't you?"

"A. I was working? Well, I was working checks with them." (Tr. p. 87).

Luther Lewis initially denied he stole any checks but as cross examination continued, he stated:

"Q. Isn't it a fact that on the 2nd of March, 1968 you were caught or seen stealing checks out of a mailbox on Connemaugh Street?"

"A. Isn't it a fact? Well, I don't have any dates but, yes, I was caught. I beg your pardon, I wasn't caught taking any checks, they say I did. I was identified by this kid on the street, they found no checks on me and they gave me the checks supposedly from the mailbox and I was traced and appeared as a witness and I am on probation about it now."

"Q. That was Connemaugh Street, right?"

"A. Connemaugh, I think it was."

"Q. You gave the check to Ida, right?"

"A. Yes."

"Q. To get rid of the thing, eh? You were caught with it, you said, 'Get rid of it', right?"

"A. At the time, yes." (Tr. pp. 91–92).

## II. FINDINGS OF FACT

■ From the evidence brought forth at trial, we make the following findings:

1. Luther Lewis, Ida Lewis and Glenwood Richardson were involved in a check cashing scheme from October, 1967, to on or about March 2 or 3, 1968.

2. As part of the scheme, defendants Luther Lewis and Glenwood Richardson along with the unindicted co-conspirator, Ida Lewis, used false identification to cash government checks stolen from mailboxes of individuals such as Mike Honick.

3. On or about March 2, 1968, Luther Lewis stole a government check from a mailbox on Connemaugh Street which was made payable to a Mary Taylor. Luther gave the check to Ida, who endorsed the check. On learning that someone had seen Luther stealing the check, Ida placed the check back in a mailbox.

4. The overt act of Luther Lewis in stealing this check and handing it to Ida

is sufficient to find him guilty of the alleged conspiracy to violate 18 U.S.C., Section 495.

5. After a review of all the evidence, we can only make a finding of fact that Luther Lewis is guilty of conspiracy to violate 18 U.S.C. Section 495 and a judgment of guilty is hereby entered against Luther Lewis.

## III. MEMORANDUM OF LAW

The three legal issues of significance in this case are 1) the timeliness of defendant's motion objecting to the competency of Ida Lewis as a witness in this case; 2) whether or not a marital privilege existed making Ida incompetent to testify against Luther, and 3) whether or not the Statute of Limitations tolled prior to the return of the indictment of March 1, 1973.

### FAILURE TO FILE A TIME-LY OBJECTION

The government both at trial and in their memorandum in opposition to defendant's motion at trial to assert the marital privilege was untimely since such should be asserted prior to the testimony of the witness. Defendant in his motion to dismiss raised this issue prior to trial, but since this issue could not be a basis for dismissing the indictment, the motion to dismiss was denied. See: Las Vegas Merchant Plumbers Ass'n v. United States, 210 F.2d 732 (9th Cir. 1954), cert. den., 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954), reh. den., 348 U.S. 889, 75 S.Ct. 202, 99 L.Ed. 698 (1954); United States v. Gilboy, 160 F. Supp. 442 (M.D.Pa.1958). At trial, defense counsel did not object to the testimony of Ida Lewis until the close of the case and all testimony had concluded. See Tr. pp. 93-96.

The prosecution's contention would be valid if this case were tried before a jury. See: Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958); United States v. Lewis, 140 U. S.App.D.C. 40, 433 F.2d 1146 (1970).

In our situation, defendant waived his right to a jury trial and the case was tried by the Court without a jury. In a similar situation involving the question of competency of a wife to testify against her husband the defense raised the question by way of a motion to suppress. United States v. Winfree, 170 F.Supp. 659 (E.D.Pa.1959). The Court through Judge Van Dusen (then a District Court Judge) denied the motion to suppress. Since the case was tried without a jury and since defense counsel had raised the issue of Ida Lewis' competency by prior motion, we hold that he did not waive his right to object to this evidence by raising his objection after all the testimony had been submitted. If a valid marriage would have been proven at trial, the courts of Pennsylvania hold that the question of competency could be raised at any time and

"[C]onnivance by the parties cannot evade it, nor can indulgence by the court." Commonwealth v. Stots, 436 Pa. 555, 261 A.2d 577 (1970); Canole v. Allen, 222 Pa. 156, 159, 70 A. 1053. Accord, Huffman v. Simmons, 131 Pa.Super. 370, 376, 200 A. 274, 276 (1938).

Reviewing the entire record, we therefore find that defense objections were made in a timely manner.

### INCOMPETENCY OF IDA LEWIS

On the record numerous statements were made by Ida Lewis and the defendant concerning their prior relationship. Ida testified on direct examination that she had been married to a Jack Owens in 1956, then to Luther Lewis in 1965. She described the relationship with Luther Lewis as a common law type from 1965 to 1968. (Tr. p. 7). On cross examination she testified that she never divorced her first husband but merely went through a civil ceremony in marrying Luther. Evidently, she did not consider such a bigamous relationship but merely "a phony" one. Since Ida was pregnant at the time, she believed the exigency of the situation required a ceremonial marriage.

Luther Lewis claims that he married Ida in a ceremonial marriage, she was pregnant at the time but that Ida told him she had been married but also divorced. Luther testified to being married previously but that his wife divorced him prior to his ceremonial marriage with Ida.

■ The test of whether a valid marriage existed is not whether the parties to an allegedly lawful marriage believe they are lawfully married, but whether in law they are lawfully married. Commonwealth v. Clanton, 395 Pa. 521, 151 A.2d 88 (1959); Commonwealth v. Mudgett, 174 Pa. 211, 254, 34 A. 588; Commonwealth v. Carey, 105 Pa.Super. 362, 364, 365, 161 A. 410; Commonwealth v. Gray, 72 Pa.Super. 279; Commonwealth v. March, 248 Pa. 434, 94 A. 142; Pereira v. United States, 202 F.2d 830 (5th Cir. 1953).

■ In our present situation no proof of any lawful marriage or dissolution of prior marriages, i. e., marriage certificates, divorce records, etc. were ever entered into evidence to prove that a valid marriage existed between Luther and Ida. We conclude that no valid marriage existed. See: Orfield, The Reform of Federal Criminal Evidence, 32 F.R.D. 121 at pp. 148–156.

■■ The burden of proving the validity of the marital relationship rested with Luther Lewis since he opposed the competency of Ida. See: Commonwealth v. Stots, 436 Pa. 555, 261 A.2d 577 (1970); Commonwealth v. Clanton, 395 Pa. 521, 151 A.2d 88 (1959). From the record the mere allegations by the defendant that a valid marriage existed are insufficient to sustain defendant's burden of proof. Therefore, defendant Lewis could not claim the marital privilege to declare Ida incompetent to testify against him. The testimony of Ida was competent since no substantial proof of a valid marriage was brought forth.

## STATUTE OF LIMITATIONS

■ We hold from the testimony and evidence offered that Luther Lewis did commit an overt act, i. e., the taking of the check from the mailbox on Connemaugh Street after March 1, 1968, and therefore, the statute of limitations had not run when the indictment by the grand jury of March 1, 1973, was returned. See 18 U.S.C. § 3282. Testimony of Ida Owens Lewis, Luther Lewis, Daniel E. Mayer and Frank J. Flit prove conclusively that the social security check of Mary Taylor was taken on or about March 2, 1968. Luther Lewis on cross examination admitted giving a check to Ida to get rid of. From all the facts brought forth, Luther did commit this particular overt act in the furtherance of the conspiracy after March 1, 1968 and the government brought forth the indictment before the five year statute of limitations had run.

■ It is well settled law that the government had only to prove one overt act to have occurred during the statutory period of five years prior to the return of the indictment on March 1, 1973 to sustain the conspiracy count. The last overt act controls. United States v. Portner, 462 F.2d 678 (2d Cir. 1972); Bergschneider v. Denver, 446 F.2d 569 (9th Cir. 1971); United States v. Johnson, 165 F.2d 42 (3rd Cir. 1947) cert. denied, 322 U.S. 852, 68 S.Ct. 355, 92 L. Ed. 422.

Defendant is adjudged guilty and will be ordered to appear for sentencing.